(No. 36065.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JAMES O'LEARY, Plaintiff in Error.

*Opinion filed March 29, 1961.—Rehearing denied May 17, 1961.*

Julius Lucius Echeles, of Chicago, for plaintiff in error.

William L. Guild, Attorney General, of Springfield, and Benjamin S. Adamowski, State's Attorney, of Chicago, (Fred G. Leach, Assistant Attorney General, and Francis X. Riley, and James R. Thompson, Assistant State's Attorneys, of counsel,) for the People.

Mr. Justice House delivered the opinion of the court:

Frank Esposito, Raymond Derring and James O'Leary were jointly indicted and tried by jury in the criminal court of Cook County for the crime of robbery. They were found guilty and judgment was entered on the verdict sentencing each of them to a term of not less than ten nor more than twenty years in the penitentiary. James O'Leary individually prosecutes a writ of error in this court contending that there was insufficient evidence to sustain the jury's verdict.

On December 8, 1958, Mrs. Louise Prevenas lived in an apartment over a tavern she operated at 8690 Vincennes Street in Chicago. In this neighborhood the north-south streets, from east to west, are Vincennes, Sangamon, Mor-

gan and Ashland; the east-west streets, from north to south, are 85th, 86th, 86th Place and 87th. The tavern building faces east on Vincennes Street between 86th Place and 87th Street and has an alley running west from the rear of the tavern which crosses Sangamon and continues on to Morgan Street.

About four o'clock in the morning, Mrs. Prevenas was awakened when a man entered her apartment and told her it was a hold-up. It was dark so she could not see him. She heard one or more others in the apartment and one tied her hands and the other her feet. They took her mink coat, jewelry, wrist watch and $815 in coins. Her screams were heard by a neighbor who arose and went downstairs to investigate. He saw two men, one wearing a checkered ski cap, taking liquor out of the back room of the tavern. He immediately notified a nearby policeman who radioed an alarm about the robbery and then returned with the neighbor to the tavern.

After talking with Mrs. Prevenas, the two went into the alley where they found three or four sets of footprints clearly visible in the fresh snow. The tracks led them west down the alley away from the rear of the tavern. At Sangamon Street, one set of tracks turned north and led to a place where fresh tire tracks indicated that an automobile had been driven from a parking space at the curb. The remaining three sets of tracks proceeded west across Sangamon and led down the alley toward Morgan Street.

In the meantime, two more patrolmen who heard the broadcast of the robbery, drove south on Morgan Street. As they crossed 85th Street they saw three men run out of the same alleyway into which the first patrolman had been led by the tracks from the rear of Mrs. Prevenas' tavern. One was wearing an overcoat and railroad cap, the second an overcoat and checkered ski cap, and the third a suburban coat but no hat. The three men ran south on Morgan and west into another alley about fifty feet south

of 87th Street. The two patrolmen drove their car into the same alley, parked and then pursued the men on foot. They were able to follow the fresh tracks in the snow to the next north-south alleyway where two sets of foot prints turned to the north and the third turned to the south. As they followed the two sets of tracks going north, they caught sight of two of the men running north and captured Esposito and Derring near 85th and Ashland Streets. When captured, Esposito was wearing a suburban coat but no hat and Derring was wearing a dark blue overcoat and checkered ski cap.

As the first two patrolmen chased the two men running north, they alerted two other policemen who were patrolling west on 87th Street. The latter then drove their car into the alley behind the first patrol car, parked and followed the single set of footprints from the point where they separated from the other two. They were able to follow this single set of footprints in the snow into and out of several passageways until they found and apprehended the defendant, James O'Leary, lying on the ground under the rear porch of one of the houses. When arrested, O'Leary was wearing a dark overcoat and dark hat. Meanwhile, the patrolman who had broadcast the alarm found the loot taken from Mrs. Prevenas in the alleyway not far from the rear of the tavern.

The defendant contends that the State's case is purely circumstantial and insufficient to produce a reasonable and moral certainty that he participated in the crime. He says that the only fact which can be relied upon is that he was running when first observed two blocks away from the scene.

That fact is supplemented by the uncontradicted testimony of the several officers. From the tracks in the newly-fallen snow, the three men were backtracked from the point where they were seen running together to the place where the loot was found and from thence to the tavern. De-

fendant was with the two men, one of whom wore a distinctive checkered ski cap similar to that worn by one of the men in the tavern. His trail was followed from the point of separation to the porch under which he was apprehended.

Defendant's statement that two men only were in the apartment is not borne out by the record. Mrs. Prevenas heard more than one but could not say just how many there were. Similarily, the argument that only two men were seen about the tavern indicates only that no more than two men were seen together at any one time and the number of tracks refutes the two-men theory.

The foregoing facts, coupled with the inferences to be drawn from defendant's flight and hiding under a porch at the hour of 4:30 on a cold morning, justified the verdict. "(T)he requirement that the defendant's guilt be proved beyond a reasonable doubt does not mean that the jury must disregard the inferences that flow normally from the evidence before it. * * * The jury was not required to search out a series of potential explanations compatible with innocence, and elevate them to the status of a reasonable doubt." *People* v. *Russell,* 17 Ill.2d 328, 331.

The judgment of the criminal court of Cook County is affirmed.

*Judgment affirmed.*