People of the State of Illinois, Plaintiff-Appellee, v. Leonard Buck, Defendant-Appellant.

Gen. No. 51,336.

First District, Third Division.

January 25, 1968.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Shelvin Singer and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Barth H. Goldberg, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE SULLIVAN delivered the opinion of the court.

Defendant, along with two other men, was charged with armed robbery. A motion to suppress evidence was heard and denied. Defendant thereafter waived trial by jury, was found guilty and sentenced to not less than three nor more than six years in the penitentiary. From this judgment defendant appeals.

The only issue presented to this court is that the defendant's arrest without a warrant was without probable cause and that the evidence seized in a search incidental to the arrest should have been suppressed on motion. At the trial of the case all facts were stipulated between the People and defense counsel, including the physical exhibits consisting of a gun and money which were the subject matter of the defendant's motion to suppress evidence.

The facts leading up to the arrest and search are as follows: Detective Ferenzi, while investigating a burglary not related to the present case, saw the car in which the defendant was riding at approximately 12:00 o'clock noon on August 7, 1965, in the vicinity of Walton and

17

■■■■■■

Washtenaw Streets within the general vicinity of a savings and loan association located at 936 N. Western Avenue. Officer Ferenzi circled the block and a few minutes later again saw the car occupied by the defendant and two other male negroes, all of whom were dark-complected. Upon seeing this automobile for the second time in this predominantly all white, residential area, he became suspicious and wrote down the automobile license number on his clipboard; the number was 532–199, Illinois. A few minutes later Ferenzi heard on his police radio of a robbery at the savings and loan association above mentioned. He immediately went to the scene of the robbery. He learned there that the persons who committed the armed robbery were two darkskinned negroes. No one at the robbery scene mentioned to Ferenzi anything pertaining to an auto being used in the robbery. Ferenzi immediately radioed to Police Communications Center and asked for a check of the license number he had seen on the Pontiac shortly prior to the robbery. The reply was that it was issued for a Chrysler automobile. He then informed the dispatcher the description of the automobile, which was a 1954 to 1956 Pontiac, green and cream in color, license number 532–199, and notified him that it was occupied by three male negroes who were dark-complected. He also notified the Communications Center that the front fenders had a brown primer paint on them. He said that this automobile may have been used in the robbery of the savings and loan association. He also gave a description of the three occupants of the car. The radio dispatcher relayed the message but said that a Chrysler automobile was involved. Ferenzi called him back and said the plates were on a Pontiac and the dispatcher corrected his message over the radio. A short time later Ferenzi heard the radio dispatcher give out a broadcast that the vehicle had been sighted. Ferenzi thereupon proceeded to the vicinity of Roosevelt

18

Road and Union Avenue in the City of Chicago, where the car had been sighted.

Officer John J. McCleod, a Detective in the Robbery Division, was riding in an unmarked police car on Saturday, August 7, 1965, when he received messages from the Police Communications Center relative to an armed robbery that occurred at a savings and loan association located at 936 N. Western Avenue. Descriptions of the car were given over the simo-broadcast system of the police radio. He heard that three men were wanted for an armed robbery. The police radio message stated a 1954 to 1956 Pontiac, containing the license number heretofore mentioned, was being sought in connection with the robbery. The color of the car, white over green, was also given, as well as the fact that the front fenders had a primer paint on them of a brown color. Immediately prior to the time that he saw the automobile he heard another simo-broadcast stating that the vehicle in question was going south on Union from Roosevelt Road. The vehicle was stopped at 14th Place. He had already crossed the intersection. The 1955 Pontiac made a left-hand turn. Officer McCleod made a U-turn and followed the vehicle. The Pontiac went east on 14th Place from Union to Jefferson. McCleod got parallel to the car, drew his revolver and ordered the driver to stop, "Police." He ordered all passengers, three men, out of the vehicle. He was on the left side of the Pontiac. As he got out of his car and ordered the men out of the Pontiac, another vehicle driven by another Detective was standing to the rear of that vehicle. The other detective was Detective Givens. In the front seat of the vehicle there was a brown colored paper bag, open at the top, and a blue steel revolver was also on the front seat. There was no difference between the vehicle described in the broadcast and the vehicle that he stopped relative to license number, color or year model. The three men got out of the Pontiac and were frisked

19

by Detectives McCleod and Givens. A man named Williams was the driver of the car. A search of Williams disclosed nothing. McCleod further testified that his only basis for stopping that car was the fact that he had received the radio message from the Police Communications Center.

Detective Marcus Givens testified that he was employed as a police officer on August 7, 1965; that he arrested the three defendants in the Pontiac automobile. He testified that the automobile and the three defendants were searched. He found money, a wallet and a gun which were seized. Shortly after noon on August 7, 1965, he was alone in an unmarked detective car. Shortly after noon he heard a message broadcast to his vehicle concerning a robbery of a savings and loan association at 936 N. Western Avenue, and the description of the automobile wanted for this offense was broadcast over the air. He also described the model, color and license number of the Pontiac, and that it was occupied by three male negroes, and that the car had primer paint on the front fenders. At the time he heard the message, which also stated that the offense involved was armed robbery, he was at Roosevelt and Canal. He then drove to Roosevelt and Union and parked beside the Dan Ryan Expressway. He was watching for the car described in the radio message on the expressway. He observed the car turn off Roosevelt Road onto Union and it proceeded south on Union Avenue. He noticed the green and cream Pontiac with the license number described and then started following it. He contacted the Police Communications Center and told them he was following a car fitting the description of the one wanted. He radioed for assistance. At Jefferson Street Detective McCleod and he (Givens) went on either side of the car, stopped it and ordered the three men out. Williams was driving the car. Jackson was in the front seat beside him, and Buck, the defendant here, was in the rear seat. After the occupants

20

had left the car the three were searched. Under the shirt of Jackson they found a large quantity of money. Buck was wearing coveralls and there was a wallet in the back pocket of the coveralls. The wallet was given to Detective Givens by Buck as they were being taken into the police station. When Buck gave the wallet to Detective Givens he told Detective Givens to take that too, because it was taken from one of the men at the holdup site.

The motion to suppress was filed by the defendant, Leonard Buck, together with Freddie Jackson, who is not a party to this appeal.

The petitioner stated that the search and seizure of the proceeds of the armed robbery were in violation of sections 6 and 10 of Article II of the Constitution of the State of Illinois. Section 6 of Article II of the Constitution of Illinois, 1870, is as follows:

"Sec. 6. The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated; and no warrant shall issue without probable cause, supported by affidavit, particularly describing the place to be searched, and the persons or things to be seized."

Section 10 of Article II of the Constitution of Illinois is as follows:

"Sec. 10. No person shall be compelled in any criminal case to give evidence against himself, or be twice put in jeopardy for the same offense."

The officers at the hearing on the motion to suppress testified that they had no search warrants at the time of the arrest.

As was heretofore mentioned, the defendant Buck contended that his arrest without a warrant was without

probable cause, and that the evidence seized in a search incidental to the arrest should have been suppressed pursuant to his motion.

In People v. Jones, 31 Ill2d 42, 47, 198 NE2d 821, it was stated that reasonable cause means something less than evidence which would result in a conviction, and it is also established that reasonable cause may be founded upon evidence that would not be admissible at the trial. It was also stated in that case that the existence of reasonable cause which would justify an arrest without a warrant depends upon "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Citing Brinegar v. United States, 338 US 160, 175, 93 L Ed 1879.

In Jones, supra, it was also stated on page 47, "But at the same time it has been observed that police officers 'often must act upon a quick appraisal of the data before them, and the reasonableness of their conduct must be judged on the basis of their responsibility to prevent crime and to catch criminals.' People v. Watkins, 19 Ill 2d 11, 19."

It is contended by the defendant that the information received from the police communications radio was based on information supplied by Officer Ferenzi, who in directing that the occupants of the auto be arrested, acted upon a "hunch," "intuition," and "guesswork." The defendant also argues that information unreliable at its source cannot be made reliable merely because it is received secondhand or thirdhand, through an intermediary source that is itself reliable.

In People v. Brown, 38 Ill2d 353, 231 NE2d 577, the court said:

> "An examination of the record indicates that *the arresting officers* had valid reason to suspect, at the very least, that the automobile driven by the defendant had been stolen. It is the duty of police officers

22

when confronted with circumstances giving an appearance of criminal activity to investigate in an effort to determine whether such criminal activity, in fact, exists. . . . Faced with the situation as it existed at the time of the arrest, we find that the search of the trunk by the police officers, in an attempt either to ascertain the ownership of the automobile or to determine whether a crime had, in fact, been committed was not unreasonable. Consequently, the trial court did not err in denying Brown's motion to suppress. See People v. Jones, 38 Ill2d 427, 231 NE2d 580." (Emphasis supplied.)

Certainly the arresting officers in the instant case had, at the very least, a valid reason to suspect that the three occupants of the car which they stopped had participated in an armed robbery, and it was their duty to investigate to determine whether a crime had, in fact, been committed by them.

In People v. McFadden, 32 Ill2d 101, 203 NE2d 888, an unknown informer gave information to a State narcotics officer. The officer gave the information to a Chicago police officer, who, in turn, made the arrest. Neither the State narcotics officer nor the Chicago police officer knew whether the informer was reliable. The court regarded the State officer as the informer, and the arrest was upheld on the apparent reasoning that the State officer was known to the Chicago officer as the supplier of reliable information, and as such the Chicago police officer could make a legal arrest. The court there stated that the probable cause of the arresting officers was not based solely on Ware's (State narcotic inspector) past reliability, as the defendant argued, but was based on his past reliability plus their verification of the present information except for possession of the narcotics by defendant. Both of the arresting officers in the McFadden case testified that the information from Ware, the

State narcotic inspector, had always been reliable, but they also knew that his information was based on a tip from an informer. The defendant, upon alighting from a northbound bus at 61st and Halsted was asked by the arresting officer if he was McFadden and he said yes. They then arrested him. His description fit that given by Ware. A search ensued and the narcotics were found.

In the instant case the arresting officers received their information from an admittedly reliable source, the Police Communications Center. They were given the year model, make and color of the car, a description of the primer paint on the front fenders, the license number on the car and a description of the occupants of the car. The probable cause of the arresting officers was not based solely on the past reliability of the Police Communications Center but was based upon the past reliability of the Police Communications Center plus their verification of the present information they had received from the center except for the fruits of the crime. The court in People v. McFadden, supra, held that such a search was reasonable. Furthermore, Ferenzi, the informing officer, had reasonable grounds to believe that the suspects and automobile here involved were connected with the crime. He had learned that the license plates were registered as on a Chrysler but in fact were on a Pontiac. That would give him reasonable grounds to believe that the auto or the plates were stolen and that the occupants of the automobile, having been in the immediate vicinity of the armed robbery, were the perpetrators of that crime.

People v. Brinn, 32 Ill2d 232, 204 NE2d 724, involved a case where searches were made pursuant to written statements of Richard Morrison, a confessed burglar, and interviews between Morrison and police officials in which he detailed the commission of burglaries with the defendants (police officers), and in which he stated that stolen property could be found in the homes of the de-

24

fendants. Search warrants were prepared, and teams of police officers were ordered to attend a meeting. There Captain Hackett told the officers that a man in custody had accused certain police of aiding him in burglaries and in receiving the proceeds. Captain Hackett also told the teams that they had ten search warrants for the men and that they were to go to the residences of the men at a certain hour and keep the premises as they found them until Chief Newey and Morrison arrived. There were obvious defects in the search warrants, yet the trial court held that the search and seizure of the property in question was justified, not on the basis of the search warrants, but on the basis that the searches and seizures were incident to lawful arrests. The court said the following on page 242:

> "It is true that the teams of police officers making the search had not read Morrison's statements and had not talked to him, but the reasonableness of their actions is readily justified by the information submitted to them by their superior."

The court also commented that it felt that the detailed accusations of Morrison, together with corroborating facts concerning particular burglaries, were sufficient to form a basis for a reasonable belief that a felony had been committed and that the defendants had committed it.

There was no evidence as to the past or previous reliability of the informant Morrison, yet the court upheld the decision of the trial court in refusing to suppress the evidence and further held that the evidence was obtained by reasonable searches incident to lawful arrests.

In People v. Barbee, 35 Ill2d 407, 220 NE2d 401, on page 411, the court said:

> ". . . so the legality of the conduct of the officers in this case is to be determined upon an appraisal of the situation that confronted them, and not upon the success or lack of success of their efforts."

And on page 412 the court said:

> "The 'practical demands of effective criminal investigation and law enforcement,' (Elkins v. United States, 364 US 206, 222, 4 L Ed2d 1669,) required that the defendant be apprehended, regardless of the risks involved in arresting him."

In People v. Moore, 35 Ill2d 399, 402, 220 NE2d 443, the court said:

> "But the fourth amendment is concerned with unreasonable searches and seizures, and the reasonableness of the conduct of police officers is not to be narrowly circumscribed by the chance boundaries of decided cases."

And on page 403 of the same case the court said:

> "In this case, moreover, the officers were confronted in the middle of the night with a critical situation. It was reasonable to assume that the explanation for the shots fired at officer Clifford might be found in the car which the defendants abandoned when they fled. The officers were under the highest duty to determine the cause of that shooting, and to apprehend the men who fired the shots. Their failure to act promptly might have subjected them to discipline. When a police officer could justifiably be disciplined for failure to act, his action can hardly be characterized as unreasonable."

Officers McCleod and Givens had received detailed communications over the police radio. It would, in our opinion, have been unreasonable for those arresting officers not to make the arrest and consequent search. Certainly, they would have subjected themselves to justifiable disciplinary action for failure to act, and when such is the case their action can hardly be characterized as unreasonable.

We believe under the facts shown by the record in this case the information received by the arresting officers from the Police Communications Center, together with their verification thereof, constituted reasonable grounds for the arrest of the defendants, and the search of the defendants and the car subsequent thereto.

Judgment affirmed.

DEMPSEY, P. J. and SCHWARTZ, J., concur.