(No. 44250.-

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. BOBBY MACK BROWN, Appellant.

*Opinion filed May 26, 1972.*

RYAN, J., took no part.
SCHAEFER, J., dissenting.

BOBBY MACK BROWN, *pro se*.

WILLIAM J. SCOTT, Attorney General, of Springfield, and ROBERT S. CALKINS, State's Attorney, of Peoria (JAMES B. ZAGEL, Assistant Attorney General, and ROLAND N. LITTERST, Assistant State's Attorney, of counsel), for the People.

MR. JUSTICE DAVIS delivered the opinion of the court:

The defendant, Bobby Mack Brown, was indicted in the circuit court of Peoria County for the crimes of rape and indecent liberties with a child. He was found guilty of both charges after a trial by jury, and was sentenced to the Illinois State Penitentiary for not less than seven nor more than eleven years. The appellate court affirmed the conviction *(People v. Brown, 131 Ill.App.2d 669, 267 N.E.2d 142)*, and we granted the defendant's petition for leave to appeal.

The defendant, 19 years of age, claims in this appeal that he was deprived of his right to counsel in preindictment confrontations by "lineup" and photographic identification; that his identification by photograph while in custody was improper; that the court erred in denying the defendant's pretrial discovery motion; that the court erred in refusing to direct a verdict of not guilty on the indecent liberties charge; and that the State failed to prove him guilty beyond a reasonable doubt.

The prosecutrix, a 12-year-old girl, was a 6th grade student. She testified that after school on March 4, 1969, she was to meet her mother to look at a house which her mother intended to rent; that when she arrived at the house no one was there and she waited on the porch; that shortly thereafter, a man, who was later identified by her during the trial as the defendant, came from the back of the house, entered through the front door and invited her into the house where it was warm; that she refused at first, then accepted and entered the kitchen; that the defendant then asked her: "Are you going to give me something?"

and when she answered "No, my mother doesn't allow that," he picked up a saw and threatened to cut her head off with it; that she then said "all right," and at his direction, went into the bedroom, sat on the bed and he pushed her down; that on his orders she pulled up her shirt and pulled down her panties to her knees, but when he said "I'm gonna have to come down," she said "No," and began resisting; that he then went to the kitchen and returned with the saw and she then consented and submitted to an act of intercourse; that she felt pain, finally wriggled loose, and ran home and told her mother and father that she had been raped; that her parents and brother returned with her to the scene of the offense, found no one there and called the police; and that when they arrived, she gave them a description of her assailant, and was then taken to the hospital.

A medical examination of the prosecutrix indicated that intercourse had occurred, and that blood was flowing from the vagina due to a tear in the hymen. A vaginal smear indicated the presence of male sperm.

The defendant, who had been residing in the house in question for about two months on a repair-rent basis, was arrested about 24 hours later and advised of his rights. While he was in custody, two police officers showed photographs of six different individuals to the prosecutrix, including one of the defendant. She identified the defendant from the photographs as the man who raped her. Contrary to good police procedures, the pictures were returned to the police files without any record being kept of the identity of the other five persons whose photographs had been submitted to her.

Subsequently, either that day or the following day, both the prosecutrix and her mother were taken to the police station where the prosecutrix viewed four persons in a lineup through a window, which permitted her to see them but did not permit them to see her. All four were dressed alike and each one walked alone before the

window. The prosecutrix again identified the defendant as the man who raped her. At this time the defendant did not have an attorney.

However, shortly prior to the lineup, the defendant had been advised by a police officer that he was suspected of the rape of a young girl; that they wanted him to appear in a lineup; and that he had the right to have an attorney. Nevertheless, he signed a waiver of counsel. The record indicates that the defendant knowingly and understandingly waived his right to counsel at the lineup.

The right to counsel at a lineup can be waived after the accused has been advised of his rights. *(United States v. Wade (1967), 388 U.S. 218, 237, 18 L.Ed.2d 1149, 1163, 87 S.Ct. 1926; Gilbert v. California (1967), 388 U.S. 263, 18 L.Ed.2d 1178, 87 S.Ct. 1951.)* Unless the record shows coercion, actual misapprehension, or misrepresentation by a person in authority, the mere fact that the defendant is a minor does not preclude him from waiving his rights. *(People v. Harden (1967), 38 Ill.2d 559, 562; People v. Wakeland (1958), 15 Ill.2d 265, 269, 270.)* We find, therefore, that he was not deprived of his right to counsel, either by virtue of his minority or by the showing of coercion, actual misapprehension, or by misrepresentation by the police officers.

Although the evidence is in conflict on the issue of whether the defendant had signed the waiver of the right to counsel when the photographs were shown to the prosecutrix, the right to counsel at such identification procedures, when the defendant himself is not present, has been rejected by this court. *(People v. Holiday (1970), 47 Ill.2d 300, 307.)* Also, the defendant failed to raise the question in the trial court, and, consequently, it need not be considered here. *People v. Hanna (1969), 42 Ill.2d 323, 324.*

The defendant next contends that the pretrial procedures used to identify him by lineup and photograph were so suggestive and conducive to mistaken identification as to

deprive him of due process of law. Particularly, he asserts that it was error for the police to show photographs of him to the prosecutrix while he was in custody. In this respect, he relies upon a statement in Eye-witness Identification in Criminal Cases (1965) by Patrick Wall, at page 71: "Where the suspect is known and in custody, however, the showing of photographs to the witnesses is usually improper, even when the procedure used in showing them is a fair one." However, we do not regard this statement as authoritative on this point. The practice of showing photographs of suspects to witnesses is essential to effective law enforcement. The dangers inherent in the practice have been recognized by the United States Supreme Court, but nevertheless, initial identification by photograph has its approval. The Court has held that each case must be considered on its own facts, and that convictions based on in-court identifications following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. *Simmons v. United States (1968), 390 U.S. 377, 382-385, 19 L.Ed.2d 1247, 88 S.Ct. 967.*

While we acknowledge that each instance of pretrial photographic identification should be examined to determine whether unreasonably suggestive procedures were used, we are not ready to hold that such identification procedure can never be used when the defendant is in custody. Circumstances may necessitate such procedure, and to prohibit it may very well hamper effective law enforcement.

In this case, at the hearing on a motion to suppress the identification evidence, the police officers testified that they showed the prosecutrix photographs of six different subjects including the defendant. The record does not reflect that the police officers in any way directed her attention to the defendant's photograph or in any way suggested that he was the one who attacked her. A review of the record indicates

that nothing improper or suggestive was done; and that she viewed the photographs one at a time and identified the defendant from among them as her attacker. The police officers were cross-examined extensively at the trial relative to the photographic identification and such examination failed to expose any potential for error in the photographic identification procedures.

The prosecutrix had ample opportunity to view the defendant and to have his facial characteristics and dress impressed upon her mind, so that she could positively identify him. We hold that even though the defendant was in custody, the procedure used to identify him by photograph was not so "impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States (1968), 390 U.S. 377, 384, 19 L.Ed.2d 1247, 1253, 88 S.Ct. 967.*

The pretrial lineup identification likewise was made without any unfair or suggestive techniques. After identifying the defendant from the photographs, the police did not discuss the matter with the prosecutrix until she was asked to view some suspects. She was not told that one of the suspects was the man whom she had identified from the photographs. Additionally, all of the participants in the lineup were of the same appearance and dress.

The burden of proving that the lineup procedure was unfair was upon the defendant. *(People v. Blumenshine (1969), 42 Ill.2d 508, 511-512.)* In the absence of any evidence demonstrating that the procedures used were suggestive, we hold that this lineup identification did not deprive the defendant of his constitutional right to due process of law.

The prosecutrix had a good opportunity to observe the defendant. She gave a description of him and the clothing he wore which was sufficiently detailed to enable the police to locate and arrest him within 24 hours. She made an identification from a photograph, identified him in a lineup, and later at the trial. Her description of the

defendant's clothing was corroborated by his admission that he wore such clothing on the day the offense was committed. We cannot say that the identification of the defendant was so doubtful, vague or uncertain that it produced a conviction which must be reversed. *People v. Fiorita (1930), 339 Ill. 78, 85.*

The defendant filed a motion for discovery prior to trial which specifically requested physical evidence, statements of witnesses, and "evidence in the possession of the State favorable to the defendant generally on the issue of guilt." The trial court granted the specific requests of the motion and subsequently, from time to time, granted further requests for specific documents, but denied the general request of the motion. This motion and the ruling thereon were prior to the effective date of our criminal discovery rules (Ill.Rev.Stat. 1971, ch. 110A, pars. 411-415) and are not indicative of our views under such rules.

The defendant does not claim that he was denied access to any specific evidence which was in the possession of the State, nor does he indicate how he was prejudiced by the failure of the court to grant the broad and general discovery request. In *Brady v. Maryland (1963), 373 U.S. 83, 10 L.Ed.2d 215, 83 S.Ct. 1194,* the Supreme Court held that "*** the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material to either guilt or to punishment ***." (373 U.S. 83, 87.) And in *People v. Moses, 11 Ill.2d 84,* at page 89, we stated: "Where it appears that there is evidence in the possession and control of the prosecution favorable to the defendant, 'a right sense of justice demands that it should be available, unless there are strong reasons otherwise'." Here the court granted discovery of the names of all witnesses for the State and the inspection of physical evidence in its possession. The denial of general discovery was without prejudice to further requests by the defendant during the proceedings. At the close of the direct examination of the

prosecutrix, the court ordered the State to produce all prior written statements as well as reports referring to any oral statements which she had made. Reports of every police officer who testified were produced for the defendant. All identifiable documents in the possession of the State, which were requested by the defendant, were produced. We find that discovery relative to all pertinent matters was granted, and that the defendant has not called to our attention any prejudice occasioned by the court's denial of the "catch-all" part of his discovery motion. In *People v. Anderson (1971), 48 Ill.2d 488,* we noted that the evidence of the defendant's guilt was persuasive and at page 500 we stated: "We will not therefore set aside the judgment because of a bare technical ruling of the trial court unless there is present some indication that the result would have been different had the ruling of the trial court been otherwise. *People v. Tribbett, 41 Ill.2d 267, 272.*"

The defendant next claims that the court erred in submitting the indecent liberties charge to the jury and in refusing to direct a verdict of not guilty on such charge of the indictment, which read: "That the said Bobby Mack Brown did lewdly fondle, touch and commit other acts too gross to be spread upon the records of this court upon the body of (named prosecutrix), said acts done with intent to satisfy the sexual desires of Bobby Mack Brown." He urges that this offense should not have been submitted to the jury because there was no evidence introduced in the trial of any lewd fondling or touching of the complaining witness, other than the act of intercourse. Section 11–4(a) (3) of the Criminal Code (Ill.Rev.Stat. 1967, ch. 38, par. 11–4(a)(3)), under which this count of the indictment was brought, provides:

> "(a) Any person of the age of 17 years and upwards who performs or submits to any of the following acts with a child under the age of 16 commits indecent liberties with a child:
>
> \* \* \*

(3) Any lewd fondling or touching of either the child or the person done or submitted to with the intent to arouse or to satisfy the sexual desires of either the child or the person or both."

In the Committee Comments to section 11—4(a)(3) of the Criminal Code of 1961 (S.H.A., ch. 38, par. 11—4(a)(3), at p. 379), it is stated: "The language of subsection (a)(3) is probably broad enough to encompass those acts more specifically described in the two preceding subsections. However, the Committee felt it more desirable to include the two specific descriptions for those precise situations, rather than to lump all physical contact, including intercourse, into the general terminology of subsection (a)(3)."

In section 11—4(a), subsections (1) and (2) state:
"(1) Any act of sexual intercourse; or
(2) Any act of deviate sexual conduct".

However, the indictment itself charged the defendant with having committed, in addition to lewd touching, "other acts too gross to be spread upon the records of this court." This allegation, though inept, was sufficiently broad to include the act of sexual intercourse which the defendant performed upon the person of the prosecutrix. An act of intercourse clearly falls within the scope of the offense of committing indecent liberties with a child; and evidence of sexual intercourse is sufficient to satisfy a charge of lewd fondling and touching. The trial court correctly submitted such charge to the jury and properly refused to direct a verdict for the defendant thereon.

In the case at bar, the charges of rape and indecent liberties grew out of one transaction. The act of sexual intercourse which constituted the rape of the prosecutrix also encompassed the indecent liberties offense. Under such circumstances, the prosecutor was not required to elect with reference to the charge on which he would seek conviction. *(People v. Gray (1949), 402 Ill. 590, 592-593; People v. Tinnell (1944), 385 Ill. 537, 540-542.)* The jury returned separate verdicts finding the defendant guilty of the offenses of rape and indecent liberties. However, the

judgment order under which the defendant was sentenced failed to specify the offense or offenses for which he was sentenced. Only one sentence should have been imposed for the two offenses which arose from the act of sexual intercourse, and such sentence should have been for the greater offense—the rape. *(People v. Duszkewycz (1963), 27 Ill.2d 257, 260-261.)* Thus, the trial court erred in not specifying the offense for which the sentence was imposed.

Another contention of the defendant is that he was not proved guilty beyond a reasonable doubt. He urges that the competency of the prosecutrix—a girl 12 years of age—to testify, must be questioned seriously.

The record shows that the defendant challenged the competency of the prosecutrix, and that a hearing on that question was held outside of the presence of the jury. The court, as well as counsel for the defendant, examined the girl very carefully. Questions relating to her understanding of the obligation to tell the truth, and to her concept of right and wrong, were put to her. Her responses indicate that she had the understanding of a girl her age, and that such understanding was sufficient to qualify her to testify.

Because the trial judge inquired on two separate occasions concerning the competency of the prosecutrix to testify, the defendant argues that there had to be a doubt in his mind. He implies that between the first and second hearings, the State's Attorney coached the girl so that her answers would meet with the approval of the judge.

The two hearings were separated by one day. The first was on the motion to suppress the identification evidence, and the second was during trial. There is nothing unusual, or necessarily improper, in the trial court's inquiry on these occasions. In fact, considering the age of the prosecutrix, and the seriousness of the charges which she brought against the defendant, the trial court's precautions and conduct were justified.

The competency of a minor witness is to be determined not by the age, but by the degree of intelligence of

the child, and such decision rests with the trial judge. It is only where there has been an abuse of discretion that his determination will be reversed. *(People v. Ballinger (1967), 36 Ill.2d 620, 621-622; People v. Davis (1957), 10 Ill.2d 430, 436-437.)* We find no proof of an abuse of discretion here.

The defendant also urges that the testimony of the prosecutrix is entitled to little weight because she did not give a full description of her attacker to the police, and that she failed to identify a saw presented to her as the one with which she was threatened.

This contention concerns not so much the weight of the evidence as the credibility of the witness. *(People v. Evans (1962), 25 Ill.2d 194, 199.)* Where there are conflicts or inconsistencies in the testimony of a witness, the jury will determine whether or not the testimony of that witness is reliable. Here, the jury chose to believe the prosecutrix, and we will not disturb its finding.

Certain alibi witnesses testified for the defendant. He was not bound to prove the defense of alibi beyond a reasonable doubt to entitle him to acquittal. It was sufficient if the defense, upon that point, raised a reasonable doubt of his presence at the time and place of the commission of the offenses charged. The burden of proof was on the State to prove the defendant guilty of such offenses beyond a reasonable doubt. *People v. Collins (1971), 49 Ill.2d 179, 189; People v. Pearson (1960), 19 Ill.2d 609, 614.*

The alibi witnesses placed the defendant in the home of Roy Taylor on the day in question from about 4:00 or 4:30 P.M. until 6:00 P.M. The incident occurred between 4:15 and 4:30 P.M. One of the alibi witnesses was a cousin of the defendant, and the testimony of these witnesses varied in certain respects and contradicted that of the defendant.

It was the function of the jury to make a determination of the credibility of the alibi witnesses and of the

weight to be given to the totality of the testimony. We cannot overturn the verdict of the jury simply because the evidence presented to it was conflicting. *People v. Setzke (1961), 22 Ill.2d 582, 586; People v. Fort (1958), 14 Ill.2d 491, 499.*

It is our conclusion that the evidence presented to the jury was sufficient to convict the defendant of the offenses with which he was charged.

For the reasons stated, we find that the jury was justified in finding the defendant guilty beyond a reasonable doubt, and we affirm the judgment of the trial court finding the defendant guilty of the offense of rape, and we modify the judgments of the trial and appellate courts to specify that sentence was entered for the crime of rape only.

*Judgments modified and affirmed.*

MR. JUSTICE RYAN took no part in the consideration or decision of this case.

MR. JUSTICE SCHAEFER, dissenting.

I cannot agree that a judgment of conviction should be affirmed in this case.

The defendant was in the custody of the police when the prosecutrix was shown the photographs. No reasons of necessity—or even of convenience—are suggested in the majority opinion to justify this blatantly improper conduct which makes it impossible to tell whether her subsequent lineup identification was based upon her recognition of the photograph or her recognition of the actual offender. (See *Simmons v. United States, 390 U.S. 377, 383, 19 L.Ed.2d 1247, 1253, 88 S.Ct. 967.*) As Judge Stouder stated in his dissenting opinion in the appellate court, "The only apparent reason for such procedure is the reason for which such practice is condemned namely the creation of a predisposition by the witness to later re-identify the suspect." (131 Ill.App.2d at 683, 267 N.E.2d 142, at 153.) While the majority in this court assert

that cross-examination failed to expose any potential for error in the photographic identification procedures, it seems obvious that there was no realistic possibility of showing such a potential by cross-examination, since the police officers had kept no record of the photographs or of the identity of the persons whose photographs were used.

It should also be noted that the majority of the appellate court in this case apparently acted upon the erroneous assumption that an alibi is an affirmative defense and that the burden rested upon the defendant to establish it. See *People v. Pearson, 19 Ill.2d 609, 614; People v. Johnson, 23 Ill.2d 465, 468; People v. Nicholls, 42 Ill.2d 91; People v. Collins, 49 Ill.2d 179, 188-191.*