THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* BOBBY DAVIS, Defendant-Appellant.

(No. 58281;

First District (2nd Division)—July 8, 1974.

Jerome Rotenberg, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Patrick T. Driscoll and Dennis J. O'Hara, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE STAMOS delivered the opinion of the court:

After a bench trial defendant, Bobby Davis, was found guilty of two counts of armed robbery and sentenced to serve 5 to 8 years imprison-

ment. On appeal defendant contends that his arrest was unlawful; that the court erred in not suppressing the identification testimony; that his guilt was not established beyond a reasonable doubt; and, alternatively, that his sentence exceeded the minimum term pursuant to the Unified Code of Corrections.

The evidence, in selective part, revealed that Davis and two codefendants, William Turner and James Green, armed with a sawed-off shotgun and revolvers, perpetrated an armed robbery of a bartender and his patrons in a tavern located at 3000 South Canal Street, Chicago. In the course of the robbery, one of the codefendants grabbed a box of cigars from behind the bar, emptied the cigars onto the floor, and proceeded to fill the emptied box with $180 and two checks which were taken from the cash register. Cash and other items were also taken from patrons.

One patron, Carole Diehl, testified that when the three defendants entered the tavern, she immediately recognized them as the same three men she had seen sitting in a white Ford station wagon parked outside the tavern 5 minutes earlier. As a result, she was able to give police, who arrived at the scene shortly after the occurrence, a detailed description of the get-away car, as well as a general physical description of the perpetrators. The officer who interviewed Mrs. Diehl immediately sent a flash message directly to all police units in the area describing the three assailants who "were riding in a 1961, possibly a 1961 to 1964 Ford station wagon white in color."

Police Officers Dennis McGuire and Edward Knizer received the flash message while driving east on 51st Street. As they approached the intersection of 51st and Princeton Avenue, they observed a white Ford station wagon with three male passengers, matching the description in the flash message. They endeavored to stop the station wagon by turning on the mars light on their patrol car. The men in the station wagon did not respond, so the officers continued their pursuit for approximately two more blocks where the vehicle was finally curbed.

As soon as the station wagon was stopped, the police officers alighted with their guns drawn. Green then emerged from the station wagon and came toward them. Officer McGuire directed Green to place his hands on the hood of the squad car. He then patted down Green's outer garments and discovered a loaded revolver in his right coat pocket. While Officer McGuire was frisking Green, Officer Knizer approached the station wagon and ordered Turner and Davis to get out of the car with their hands above their heads. As Turner opened the front door and commenced to climb out, the officer observed a sawed-off shotgun on the floor, along the front seat. From the station wagon, Officer Knizer retrieved the shotgun, a cigar box containing approximately $300 in cur-

rency, checks and money orders, and a lady's brown purse, containing papers and a bank book bearing the name "Katherine Vassallo." At trial, the victims identified the recovered shotgun as the one used by Turner, and identified the various items found in the station wagon as those taken from them during the robbery. All three defendants were identified by the victims both in lineups and in court. However, as is usual in robberies of multiple victims with multiple perpetrators, not all of the victims could identify every perpetrator. Other victims identified the co-defendants in a lineup, while one victim, Robert Neuman, identified defendant Davis.

Defendant neither testified on his own behalf nor proffered a defense.

Defendant initially contends that the court erred in denying his motion to quash the arrest in that the arrest was made without probable cause. In support thereof, defendant presents a twofold argument: first, defendant characterizes the testimony of the arresting officers as indicating that the vehicle in which the defendants were riding was stopped principally for a traffic violation and only partly on suspicion of other criminal activity; and, secondly, the description of the vehicle and its occupants was of such a general and vague nature that it "could have fit thousands of vehicles and persons in the Chicago area."

■■ Defendant's first argument distorts the record and is wholly without merit. At trial, it was elicited that while pursuing the vehicle in which defendant was riding, the arresting officers observed that the taillights of the station wagon were not properly functioning. From this testimony, defendant draws the conclusion that the arrest was based upon a traffic violation. However, in contradiction of defendant's hypothesis, the officers testified that the traffic violation was merely "coincidental" and that the reason for stopping the white Ford station wagon was that the officers believed it to be the vehicle described in the flash message. The testimony is dispositive of defendant's first point and leads to his second contention that the information gained by the officers through the flash message was wholly insufficient to constitute probable cause. We disagree.

It is well-settled that the test of probable cause to arrest is whether a reasonable and prudent man in possession of the knowledge which the arresting officer possessed would believe the person to be arrested guilty of a crime; and the conclusions drawn by the officer should be judged upon the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. *People v. Macias*, 39 Ill.2d 208, 234 N.E.2d 783; *People v. Hester*, 39 Ill.2d 489, 237 N.E.2d 466.

Turning from this general proposition to the record before us, the following considerations are relevant. Minutes after the incident, which occurred at approximately 1:20 A.M. on a Sunday morning, the arresting officers received a flash message concerning the robbery at 3000 South Canal Street; it gave a general description of three male Negroes who were travelling in a 1961 to 1964 white Ford station wagon. Shortly thereafter, on 51st and Princeton Avenue, the officers spotted a white Ford station wagon occupied by three black men, heading away from the direction of the robbery.

■■ Given the immediacy of the flash message, the matching descriptions of the vehicle and its occupants, and the proximity in time and place to the robbery, the circumstances of this case clearly demonstrate that the officers obviously had probable cause to arrest. *People v. Buck*, 92 Ill.App.2d 16, 235 N.E.2d 827; *People v. Thompson*, 133 Ill.App.2d 184, 273 N.E.2d 30.

It is next contended by defendants that the trial court erred in denying defendants' motion to suppress the identification testimony. From the record, it appears that within an hour or less after the robbery a lineup was provided and defendant was immediately identified by one of the victims. Defendant urges error in that he was the only one in the lineup with a goatee and thus the identification was suggestive and conducive to irreparable mistaken identification. We disagree.

■■ The burden is upon the defendant to establish that the circumstances attending the lineup were so suggestive as to give rise to a very substantial likelihood of irreparable misidentification. (*People v. Pagan*, 52 Ill.2d 525, 288 N.E.2d 102; *People v. Brown*, 52 Ill.2d 94, 285 N.E.2d 1.) In the present case, defendant attempts to sustain his burden by merely pointing to the fact that defendant was the only person in the lineup with a goatee. However, the record reveals that defense counsel's cross-examination of the identifying witness was entirely unsuccessful in attempting to establish that the identification was predicated only upon the goatee adorning defendant. Under these circumstances, defendant has failed to sustain his burden in urging that the identification was fatally defective. See *People v. Perry*, 47 Ill.2d 402, 266 N.E.2d 330; *People v. Jones*, 7 Ill.App.3d 820, 288 N.E.2d 918; *People v. Wicks*, 115 Ill.App.2d 19, 252 N.E.2d 698.

■■ Furthermore, during the course of the entire robbery, defendant stood approximately 10 feet away from the witness in an area well illuminated by several lights. Therefore, aside from the lineup, the record demonstrates that the identifying witness had an ample opportunity, under favorable conditions, to form an independent basis for his in-court

identification of defendant. (See *People v. Hayes*, 52 Ill.2d 170, 287 N.E.2d 465.) Moreover, even if there had been no identifications of defendant and his co-defendants, the circumstances of the arrest and the recovery of physical evidence linking them to the crimes were sufficient evidence to support the conviction. (See *People v. O'Leary*, 22 Ill.2d 52, 174 N.E.2d 191.) Accordingly, we also reject defendant's argument that he was not proven guilty beyond a reasonable doubt.

Defendant's final contention is that the case should be remanded for sentencing because the minimum for armed robbery under the Unified Code of Corrections is now less than it was on the date of sentencing. At the time of defendant's conviction and sentencing, the minimum penalty for armed robbery was 5 years' imprisonment. (Ill. Rev. Stat. 1971, ch. 38, par. 18—2(b).) Under the Unified Code of Corrections, effective January 1, 1973, the minimum penalty for armed robbery (a Class 1 felony) is 4 years unless the court "having regard to the nature and circumstances of the offense and the history and character of the defendant, sets a higher minimum term." Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—1(c)(2).

In light of the foregoing, the judgment of the trial court is affirmed and the cause is remanded to the trial court to determine whether, under the record, defendant should be sentenced to a minimum sentence of four yars under the Unified Code of Corrections or whether defendant should receive the higher minimum term of 5 years originally imposed. *People v. Fuller*, 17 Ill.App.3d 1005, 309 N.E.2d 96.

Judgment affirmed and cause remanded.

HAYES, P. J., and LEIGHTON, J., concur.