THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* ROBERT ARTHUR NORRIS *et al.*, Defendants-Appellees.

(No. 59293;

First District (5th Division)—October 11, 1974.

Bernard Carey, State's Attorney, of Chicago (Kenneth L. Gillis and John M. Cutrone, Assistant State's Attorneys, of counsel), for the People.

Frederick F. Cohn, of Chicago, for appellee Robert Arthur Norris.

Mr. JUSTICE DRUCKER delivered the opinion of the court:

Defendants, Robert Norris and William Sorenson, were charged with the crimes of murder and armed robbery. On their motion the court below suppressed the prosecution identification testimony of Helen Myrus, and the cause was stricken with leave to reinstate. Pursuant to Supreme Court Rule 604 (Ill. Rev. Stat. 1971, ch. 110A, par. 604) the State ap-

peals, contending that (1) the pre-trial photographic and lineup identification procedures utilized by the police were not suggestive and (2) even if these procedures were suggestive, the identification of defendants was of an origin independent of and untainted by these observations of them.[1]

Indictments were returned charging defendants with the December 4, 1971, murder and armed robbery of Dr. Frank Sadowski. They moved that the identification testimony of one Helen Myrus be suppressed.

The motion to suppress was heard simultaneously with the trial. The motion was sustained and a mistrial declared with leave to the State to reinstate.

Miss Myrus testified for the State that on the date in question she was employed as a clerk at the Adams-Woods Pharmacy located at 5258 West Fullerton in Chicago. Adjoining the pharmacy is a medical center in which Dr. Sadowski maintained his offices. Between 8:30 and 9 P.M., while working behind the counter, she noticed two people buying candy. There were no other customers in the pharmacy; it is well illuminated by fluorescent lights. She observed the men for approximately 5 minutes. She identified defendants as the men she saw in the pharmacy. After the men purchased some candy, she noticed that they entered the medical center. A few minutes later one of the men returned. He was carrying a large, old-fashioned black medical bag which she had seen previously in the possession of Dr. Sadowski. She identified Norris as the man carrying the bag. Sorenson was not with him at this time. Norris was walking hurriedly, carrying the bag in his right hand and "trying to cover his mouth." A few minutes later she saw Dr. Sadowski. He was covered with blood. He had a cut under one eye, and his head and neck were bruised. On the evening of December 4 she was shown a group of seven or eight photographs by a Detective Hagen and was able to identify some of them. The following day she was shown a second group of photos, and she identified some of these as well. After December 5, 1971, she saw defendants several times in the Criminal Courts Building. In March of 1972 she identified them in a lineup. A photo of the lineup was introduced into evidence. She marked an "x" over the people she identified. They were Norris and Sorenson.

---

[1] Defendant Sorenson has not filed an appearance or a brief. The record reveals that the State, appellant in this case, complied with the prescribed notice requirements. This failure by Sorenson is sufficient to allow us to summarily reverse the judgment of the trial court with regard to him. However, we believe that the ends of justice are better served by allowing litigation to be determined according to the substantive rights of the parties and not by procedural default. See *Bailey v. Bailey*, 18 Ill.App.3d 152, 309 N.E.2d 328.

On cross-examination by counsel for Sorenson, Miss Myrus testified that she had not seen defendants at any other time on December 4. She had not seen the photos that the police had shown her during the days immediately following the attack on Dr. Sadowski from the time of her identification of defendants until she had been shown the pictures on direct examination. Counsel commingled the photographs shown to her on December 4 and 5. She could not separate them into the group which she had seen on the evening of the crime and the group she had seen the following day. However, she could pick out the photos she had previously identified.

On cross-examination by counsel for Norris, Miss Myrus testified that she had seen defendants in the store prior to December 4, 1971, but they had never spoken with her and she did not know them by name. When Norris reentered the pharmacy carrying Dr. Sadowski's medical bag, he walked directly past her. He was about 30 feet away, walking hurriedly. She was not positive but thought that he was carrying the bag in his left hand. She had seen Dr. Sadowski carry the bag many times. She could not remember whether, during the days immediately preceding trial, she had been shown photographs by the State's attorney.

The court then proceeded to hear defendants' motion to suppress the in-court identification of Miss Myrus. She was called by defendants and testified that she had previously seen defendants in Judge Sulski's court but could not recall the date; this was prior to the lineup which she had viewed.

The court then examined the witness as to whether she had seen defendants in court prior to the lineup. She testified, "I don't know. See, I had been here so many times I am not sure if I had seen them prior or not. This is what I can't remember because I had been here so many times."

Officer Howard Hagen of the Chicago Police Department testified for the State that on December 4, 1971, he was assigned to investigate an incident involving Dr. Frank Sadowski. That evening, during the course of his investigation, he showed a group of photographs to Miss Myrus, and she identified one of Sorenson. The following day he showed the same group of photographs to Edward Putera, who had also been in the pharmacy on the night in question. He too identified one of Sorenson. Sorenson was arrested on December 8. When arrested, he admitted being at Dr. Sadowski's office on December 4 and implicated Norris. Hagen had Norris photographed. This picture was included in a group of photos shown to Miss Myrus. She identified one of Norris and one of Sorenson. Hagen recalled several occasions during the months of February and March when Miss Myrus was asked to come to the Criminal Courts Building. On none of these occasions was she in the courtroom

when defendants were brought out. On April 6 he was present at a line-up at which Miss Myrus identified defendants.

On cross-examination Hagen testified that on those occasions that Miss Myrus was requested to come to court, she was asked to wait in the hall when the case was called.

Officer Joseph Myrus testified for the State over defense objections. He is the brother of Helen Myrus. He accompanied his sister when she was asked to come to the Criminal Courts Building. At no time was she in the courtroom when defendants were present. On cross-examination he admitted that he did not accompany his sister to court when she was summoned on April 5.

Edward Putera, a pharmacist, testified for the State that on December 4, 1971, he was employed by the Adams-Woods Pharmacy. He noticed someone carrying a doctor's bag come out of the waiting room of Dr. Sadowski's office. He asked the man what was happening and received the reply that the doctor was going on a house call. There was someone behind the man with the bag, but Putera could not see his face. He identified the man carrying the bag as Sorenson. Several minutes after his conversation with Sorenson he saw Dr. Sadowski, who was bruised and bloody. The following day he identified some photos from a group shown to him by Officer Hagen. On cross-examination Putera stated that he had seen defendants in court on five or six occasions.

Officer Robert Shanahan of the Chicago Police Department testified that he conducted the lineup on April 6, 1972. Prior to the lineup he told Miss Myrus that she would be shown a lineup and asked if she could identify anyone. There were other officers present at the lineup, but to his knowledge they did not speak to Miss Myrus. On several dates prior to the lineup he had been in the courtroom when the case had been called. Miss Myrus was not present in the courtroom on any of these occasions.

Thereupon the court suppressed the identification testimony of Miss Myrus and struck the cause with leave to reinstate.

OPINION

■■ Defendants moved to suppress the identification testimony of Helen Myrus, alleging that it was "induced through the actions of the Chicago Police Department." Thus it was their burden to prove, by a preponderance of the evidence (*People v. Johnson*, 45 Ill.2d 38, 257 N.E.2d 3) that the procedures utilized by the people were so suggestive that they gave rise to a substantial likelihood of irreparable misidentification. See *Simmons v. United States*, 390 U.S. 377.

■■ Miss Myrus made her initial identification of defendants when she

was shown two groups of photographs by Officer Hagen within a short time after the attack on Dr. Sadowski. Courts, while noting "the potential for incorrect identifications" inherent in the use of photographs, are unwilling to "constitutionally prohibit such identification procedures." (*People v. Cooper*, 9 Ill.App.3d 291, 295, 292 N.E.2d 79; see also *Simmons v. United States*.) Rather, recognizing that the "practice of showing photographs of suspects to witnesses is essential to effective law enforcement," (*People v. Brown*, 52 Ill.2d 94, 99, 285 N.E.2d 1), the rule has been established that each case in which the photographic identification of the defendant is challenged "must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." (*Simmons*, at 384.) Thus, for example, where a color photograph of the defendant was included in a series of black and white photos, the procedure was deemed "undesirable" since it would indicate to a witness that police attention had been narrowed to that individual. (*People v. Jackson*, 54 Ill.2d 143, 295 N.E.2d 462.) However, where the record does not reflect that the police in any manner directed a witness' attention to a defendant's photograph or suggested that it was the defendant who committed the crime, courts have refused to suppress photographic identifications. See *People v. Jackson*, 12 Ill.App.3d 789, 299 N.E.2d 142.

In the instant case defendants introduced no evidence whatsoever that the photographic identification procedures used by the police were improper. Rather, the record reveals that on the evening of December 4, 1971, Miss Myrus observed defendants for a period of 5 minutes under good lighting conditions as they were buying candy. She had a second opportunity to observe Norris when he returned to the pharmacy carrying Dr. Sadowski's medical bag. Later that night she was shown seven or eight photos by Officer Hagen. From these Miss Myrus identified one of Sorenson. Pursuant to this lead Hagen arrested Sorenson who then implicated Norris. Miss Myrus was subsequently shown a second group of photos from which she identified both defendants. The photos are all multipose, color pictures of white men dressed in casual attire. Miss Myrus and Officer Hagen were questioned extensively concerning these photographic identification procedures. No hint of suggestive police conduct was adduced. Indeed, it was precisely the use of such non-suggestive procedures leading to the apprehension of suspected criminals that the supreme court in *Simmons* had in mind when it refused to totally prohibit the use of photographs, and therefore we believe that the trial

court's order suppressing the instant photographic identification is against the manifest weight of the evidence.

On April 6, 1972, Miss Myrus identified defendants at a lineup conducted by Officer Shanahan. Defendants also moved to suppress this identification.

■■ On a motion to suppress a lineup identification, as on a motion to suppress a photographic identification, the "burden is upon the defendant to establish that the circumstances attending the lineup were so suggestive as to give rise to a very substantial likelihood of irreparable misidentification." (*People v. Davis*, 21 Ill.App.3d 177, 315 N.E.2d 79 [2]; see also *People v. Brown*, 52 Ill.2d 94, 285 N.E.2d 1; *People v. Pagan*, 52 Ill.2d 525, 288 N.E.2d 102.) Defendants attempted to sustain their burden merely by pointing to the fact that they were dressed in a slightly different manner than the other members of the lineup. However, the record reveals that their questioning of Miss Myrus was entirely insuccessful in establishing that her identification was predicated only upon this fact. (See *Davis*.) Moreover, a photograph of the lineup demonstrates that it was comprised entirely of white men of approximately the same age, height and build. Although Norris was the only individual wearing a collarless shirt and only he and Sorenson wore sandals, their manner of dress was only slightly dissimilar from the informal appearance of the other participants in the lineup. Under these circumstances it is clear that the court below erred in ruling that these lineup procedures were impermissibly suggestive.

Finally, we note that there were some discrepancies in Miss Myrus' testimony. However, these discrepancies bore only upon matters collateral to the issue of whether suggestive police procedures were used to elicit her identification of defendants. We believe that the record is clear that defendants did not prove by a preponderance of the evidence that these identification procedures were fatally defective and therefore the trial court erred in suppressing Miss Myrus' identification testimony. The order suppressing the identification is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded with directions.

SULLIVAN, P. J., and LORENZ, J., concur.