THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOSEPH J. JANOSZ, Defendant-Appellant.

(No. 60291; ▮▮▮▮▮▮▮)

First District (1st Division)—September 2, 1975.

Paul Bradley and Steven Clark, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Donald M. Devlin, and Bertina E. Lampkin, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE SIMON delivered the opinion of the court:

After a bench trial, the defendant was found guilty of aggravated battery, and sentenced to a term of 1 to 3 years. This court is called upon to consider whether the prosecution proved beyond a reasonable doubt that the defendant did not act in self-defense, and whether the court abused its discretion in denying probation.

The site of the battery was 5254 South Winchester in Chicago. A house with three apartments was located on the property and the defendant lived in a separate cottage at the rear of the premises. The two buildings were separated by a yard, with the back porch of the house containing the apartments facing the defendant's cottage. All of this property was

owned by the same person and the defendant conceded all the residents at 5254 South Winchester had the right to use the yard between the cottage and the house, the side yard and all the yards around the house.

The defendant, who was then 21 years old, held a party in his cottage on the evening of July 21, 1972. There were between 10 and 15 guests. The persons who were present at the party or observed incidents relevant to the battery with which the defendant was charged and who were witnesses at his trial or referred to in the testimony were:

Phillip Czmiel, the victim, was 16 or 17 at the time of the incident, and was drinking beer on the premises at 5254 South Winchester when the attack took place. He received a bilateral fracture of the mandible and a cerebral trauma with a possible brain contusion and required hospitalization for a month during which his jaws had to be wired.

Edward Stalter, 16 or 17 at the time of the party, was also drinking beer on the premises where the party occurred, and brought a six-pack of beer to the defendant's party.

The 15- or 16-year-old son of the owner of the premises was at the party, and was drinking beer in the yard outside the defendant's cottage.

Rudolph Senka, who lived at 5300 South Winchester, did not attend the party, but observed from his window the defendant's treatment of Czmiel.

Stalter testified he was invited to the party by the defendant and that he in turn invited Czmiel who accompanied him to the property on which the defendant's cottage was located. The defendant did not know Czmiel and denied inviting him or Stalter to his party. Both Stalter and Czmiel denied that the latter entered the defendant's cottage at any time. Czmiel's testimony was that he was on one of the porches of the house in front of the defendant's cottage visiting with Stalter, another young man and two girls. Both Stalter and Czmiel acknowledged that Stalter provided Czmiel with several cans of beer which Stalter admitted getting from inside the defendant's cottage and which Czmiel drank outside.

The defendant testified that he first observed Czmiel in the vicinity of his cottage between 9:30 and 10 p.m., and later saw Czmiel drinking beer out of a can which Stalter brought him from the defendant's cottage. The defendant did not give Stalter permission to provide Czmiel with beer. The defendant's testimony was that he told Czmiel to leave the premises because he might get in trouble having Czmiel on the premises, but that Czmiel refused to leave saying it was not the defendant's property.

The defendant further testified that later when everyone had left the party except Czmiel and the son of the owner of the property, he saw Czmiel walking out of his cottage with a can of beer and again told him to leave. The defendant claimed that Czmiel upon being told to leave

responded that he would do whatever he wanted to do as he was there with Stalter, threw the can of beer at the defendant, and started swinging at him. The defendant swung back at Czmiel and he and Czmiel continued to swing at each other with the fight ending up in the street approximately 50 feet away from where it started. According to the defendant, they fell down in the street with the defendant lying on top of Czmiel. The defendant testified that the son of the owner of the premises came up, separated them, pulled him off Czmiel and dragged him back to his cottage, leaving Czmiel lying in the street. The defendant admitted telling Stalter, when the latter returned to the defendant's cottage a short time after the fight, that he left Czmiel lying out on the street. The defendant testified he suffered only scratches as a result of the incident, and that after the fight, he returned to his cottage, drank another beer and started to go to sleep when Stalter returned with hamburgers.

Stalter testified he left the party to get some hamburgers and returned at about 3 a.m. When he asked defendant where Czmiel was, the defendant responded that he "stomped" him and beat him up.

Czmiel's version of the fight differed from the defendant's. Czmiel testified that he was sitting on one of the porches of the building in front of the defendant's cottage when the defendant came up to him and started striking him with his fists and feet. The next thing he remembered was waking up in the hospital.

Senka testified that about 2 a.m. he was awake and looking out his front window when he observed the defendant and another person carry Czmiel out to the middle of the street, lay him down and return to the cottage in the rear. He called the police who came with a fire department ambulance and picked up Czmiel.

The son of the owner of the premises, who was the only witness to the altercation, did not testify.

The trier of fact weighed the evidence and determined that the defendant's claim of self-defense did not raise a reasonable doubt of his guilt. In reaching that determination the trial judge resolved the conflicts between the testimony of Czmiel, Senka and Stalter on the one hand and the defendant on the other. This court cannot substitute its judgment for that of the trier of fact on issues of credibility of witnesses or the weight to be given their testimony unless the proof was so unsatisfactory or improbable as to leave a reasonable doubt of the defendant's guilt. *People v. Clay* (1973), 55 Ill.2d 501, 507, 304 N.E.2d 280; *People v. Clark* (1972), 52 Ill.2d 374, 288 N.E.2d 363; *People v. Catlett* (1971), 48 Ill.2d 56, 64, 268 N.E.2d 378.

■■ The defendant's testimony that Czmiel started the fight after leaving the cottage by throwing a beer can and swinging at him is contradicted

by Czmiel's testimony that he was never inside the cottage and that the defendant started the fight. It is contradicted in some measure by Stalter's testimony that the defendant told him that he "stomped" Czmiel and beat him up. The defendant's testimony as well as his claim of self-defense is contradicted by the testimony of the only apparently disinterested witness, Senka, that he saw the defendant and another person carrying Czmiel into the street and leave him there. This testimony is also inconsistent with the defendant's version that the fight moved over an area of 50 feet, ending on the street with the defendant on top of Czmiel. In determining who started the fight, it is relevant to note that it commenced after all the guests except the son of the owner had left. The defendant claimed the fight started when he saw Czmiel walking out of his cottage and asked him to leave, but the evidence supports the conclusion that after a night of revelry and beer drinking and after his guests had left, defendant decided to "stomp" Czmiel and beat him up. The record does not reveal the size and appearances of Czmiel and the defendant, observations which the trial judge could make. Considering the record as a whole, there is no justification for interfering with the trial court's finding of guilty. While the defendant's version of the incident directly contradicts Czmiel's, that does not render the State's evidence insufficient to prove the defendant guilty beyond a reasonable doubt. *People v. Brown* (1972), 52 Ill.2d 94, 106, 285 N.E.2d 1; *People v. Thornhill* (1975), 31 Ill.App.3d 779, 333 N.E.2d 8.

The defendant's request for probation was denied. The decision to which this court must direct its attention on the issue of probation is *People ex rel. Ward v. Moran* (1973), 54 Ill.2d 552, 301 N.E.2d 300. An excellent summary of the holding in *Moran* was set forth in this court's decision in *People v. Thornhill* where the court stated *Moran* held:

> "* * * (1) there is no constitutional right to probation; (2) the decision as to whether to grant or to deny probation lies within the sound discretion of the trial court; (3) subsequent review by a reviewing court of that determination is limited to ' "ascertaining whether the trial court did, in fact, exercise discretion or whether it acted in an arbitrary manner." [Citation.]'; (4) the 1970 Illinois Constitution does not authorize appellate courts to grant probation; and (5) that Supreme Court Rule 615 (Ill. Rev. Stat. 1973, ch. 110A, par. 615) 'was not intended to grant a court of review the authority to reduce a penitentiary sentence to probation.' " 31 Ill.App.3d 779, 786-87.

■■ Notwithstanding the defendant's honorable discharge from the Air Force after service in 1970 and 1971 and his good employment record, we cannot conclude that the trial judge acted arbitrarily or abused his discre-

tion, particularly in view of Senka's testimony. He observed the defendant and another individual carry Czmiel into the street and leave him lying in a position where he could have been run over. The brutality of this act, in complete disregard of Czmiel's safety and his life, justified the denial of probation.

It is noted that the sentence imposed was the minimum provided by statute for aggravated battery; accordingly, there is no basis for any suggestion that the sentence be reconsidered.

The judgment must accordingly be confirmed.

Judgment affirmed.

BURKE, P. J., and GOLDBERG, J., concur.