THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* WALTER JACKSON, Defendant-Appellant.

(No. 56229; ▮▮▮▮▮▮▮)

First District (2nd Division)—June 5, 1973.

James J. Doherty, Public Defender, of Chicago, (Darrell M. Fineman and James N. Gramenos, Assistant Public Defenders, of counsel,) for appellant.

Bernard Carey, State's Attorney, of Chicago, (Elmer C. Kissane, Patrick J. McNally, and Ferdinand Minelli, Assistant State's Attorneys, of counsel,) for the People.

Mr. PRESIDING JUSTICE STAMOS delivered the opinion of the court:

Defendant, Walter Jackson, was charged with armed robbery.[1] In a trial without a jury, he was convicted and sentenced to the penitentiary for not less than three nor more than nine years. On appeal defendant contends that he was denied due process of law in that the identification procedure was suggestive.

On the motion to suppress the identification evidence, the arresting

---

[1] Ill. Rev. Stat. 1971, ch. 38, par. 18—2.

officer testified that on January 26, 1971, he received information from an assistant State's Attorney that defendant might be a suspect in the robbery that occurred on May 11, 1970. He went to the victim's store, the Rodriguez Grocery, with seven or eight photographs, one of which was of defendant. Ernest Rodriguez, the store owner, picked out defendant's photograph. The photographs were then shown to Victor Rodriguez who also picked defendant's photograph. The officer testified that all the photographs were of the same type—each was black and white and contained a front and profile view of each man.[2] The officer neither retained the photographs used nor did he retain a record of the names of the men in the other photographs. He testified that he did not indicate to Rodriguez brothers which photograph depicted defendant.

Immediately upon identification of defendant's photograph, the officer and his partner arrested defendant at his home. Defendant's contention that the victims were with the police when defendant was arrested at his home is not supported by the record. After the arrest, two officers who were stationed at the rear of defendant's home were sent to the Rodriguez store to request Ernest to immediately view a lineup at the police station. The lineup consisted of five men and defendant; none of the other men in the lineup appeared in the photographs shown to Ernest. The officer testified that Ernest was not shown a photograph of defendant prior to the lineup, and that nothing was said by Ernest or himself during the lineup. A photograph of the lineup was introduced.

Ernest Rodriguez also testified that on January 26, 1971, he was shown seven or eight photographs. He stated that the photographs were the same size and color, and that he looked only at the front of the photographs. All the photographs were of young, male Negroes. He testified that prior to the lineup no one told him that defendant would be one of the participants, and that he did not see defendant's photograph at the police station. The motion to suppress the identification evidence was then denied.

At trial Ernest testified that on May 11, 1970, at approximately 1 P.M., two men entered his grocery store. They remained about 15 minutes without making a purchase. At 6:30 P.M. these two men returned. Ernest testified that, while he was working the cash register, one of the men, the defendant, put a gun in his side and told him to walk to the meat cooler located in the rear of the store. Defendant and Ernest

---

[2] There is evidence that after the robbery of May 11, 1970, the Rodriguez brothers were shown photographs, but failed to identify any of the photographs. Defendant's photograph was not included in this first group.

walked to the meat cooler where defendant also forced Victor Rodriguez and the stockboy into the meat cooler. The other offender remained at the front of the store. After approximately three minutes, Ernest looked out the cooler door and observed the two men walking out of the store with bank currency bags. The occurrence lasted five minutes. Ernest testified at trial that he picked defendant's photograph from seven or eight photographs shown to him on January 26, 1971, and that he picked defendant from a lineup two hours after his photograph identification. In addition Ernest made an in-court identification of defendant.

Victor Rodriguez's testimony corroborated his brother's account of the robbery. In addition he testified that he looked at the photographs on January 26, 1971, and picked defendant's photograph. On cross-examination he stated that he did not see which photograph his brother chose, and that he did not view the lineup. Victor also made an in-court identification of defendant as the robber.

The only evidence connecting defendant to the robbery was the pretrial identification testimony and the in-court identifications of defendant by the Rodriguez brothers. On cross-examination Ernest testified that he did not pay attention to whether the offender had a goatee, and that he had short hair and no mustache or long sideburns. Victor stated on cross-examination that the offender had short hair, but he did know if he had a goatee. Victor also stated that he did not get a good chance to look at him, but thought that he had a "clean face." Both witnesses testified on redirect that they looked at the man's face. Defendant and defendant's mother testified that in May 1970 defendant had a mustache, goatee and long sideburns. Defendant denied robbing the store.

Defendant contends that the photograph identification nine months after the robbery and the lineup identification two hours after the photograph identification was unduly suggestive and was a violation of due process.

■■ Initial identification by photograph has been approved by the United States Supreme Court. In *Simmons v. United States*, 390 U.S. 377, 384, the court held:

> "[E]ach case must be considered on its own facts, and that contions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photograph identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."

In the instant case, defendant was not in custody at the time of the photograph identification, and the Rodriguez brothers testified that they

were shown seven or eight photographs of different individuals. The exhibition of the photographs constituted a part of the normal investigative procedure.

■■■ This court recognizes that the burden is on defendant to establish that the identification procedure was so suggestive as to give rise to a substantial likelihood of irreparable misidentification. (*People v. Johnson*, 45 Ill.2d 38, 257 N.E.2d 3.) In addition, we recognize that in a situation such as that in the instant case, where the photographs were not produced at the hearing on the motion to suppress or at trial, it is difficult to prove suggestiveness. We believe that effective police and prosecutorial procedures require retention of the photographs or a record of the photographs. In this case, however, the police officer and the victim testified at the hearing to suppress and at trial that seven or eight photographs of different subjects were shown to the Rodriguez brothers. The record does not reflect that the police in any manner directed attention to defendant's photograph, or in any manner suggested that he was the one who committed the robbery. Nothing improper or suggestive was done. Ernest and Victor separately viewed the photographs one at a time and identified defendant from among them. The police officer and the brothers were cross-examined extensively regarding the photograph identification. Under these circumstances, we hold that the photograph identification was not suggestive. See *People v. Brown*, 52 Ill.2d 94, 285 N.E.2d 1.

■■ The pretrial lineup procedure, within two hours of the photograph identification, was also not suggestively conducted. After identifying defendant from the photographs, the police did not discuss the matter with Ernest Rodriguez until after he was asked to view the suspects. He was not told that one of the suspects was the man he had identified from the photograph. Additionally, a photograph of the participants of the lineup was introduced into evidence.

■■■ Even assuming that the identification procedures were suggestive for the reason that the photographs were not produced at the hearing to suppress and the lineup was conducted within two hours of the photograph identification, we must look to the "totality of circumstances" to determine whether the identifications were reliable. (*Neil v. Biggers*, 409 U.S. 188; *People v. Holiday*, 47 Ill.2d 300, 265 N.E.2d 634.) The robbery occurred nine months before the identification of defendant. Ernest Rodriguez testified that he observed defendant for a total of approximately 20 minutes on the day of the robbery. Defendant was in the store standing near Ernest for approximately 15 minutes some hours before the robbery. Only four or five customers were in the store at this

time. At approximately 6:30, Ernest saw defendant again. The store at this hour was very busy, but defendant put a gun to Ernest's side and pulled him from behind the cash register. They then walked 100 feet to the rear of the store. The robbery took five minutes, and Ernest testified that he, his brother and the stockboy spent three of those minutes in the meat cooler. Ernest testified that he looked at defendant's face, but he did not notice facial hair. Victor Rodriguez testified that he only saw defendant for a few minutes since he was in the rear of the store when defendant walked in at 6:30. He described defendant to police after his brother had given his description of the robber. His description corroborated his brother's, but he did admit on cross-examination that he did not get a good chance to look at the robber.

We are aware that the identification evidence is the only evidence adduced by the prosecution, and that such evidence must be carefully scrutinized. (*People v. Gardner*, 35 Ill.2d 564, 221 N.E.2d 232.) In view of the facts, Ernest Rodriguez had ample opportunity to closely observe defendant at the time of the robbery. We do not believe that the subsequent identification procedures were so suggestive as to give rise to a substantial likelihood of irreparable misidentification. Nor do we believe that the conviction of defendant rests on identification which is doubtful, vague and uncertain.

The judgment is affirmed.

Affirmed.

LEIGHTON and HAYES, JJ., concur.