THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
SIDNEY COLLINS, Defendant-Appellant.

First District (3rd Division)   No. 86—0446

Opinion filed November 9, 1988.

Marc R. Kadish, of ITT Chicago Kent College of Law, and Suzin W. Farber, both of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Inge Fryklund, Judy L. Groeneveld, and Lauren A. Freeman, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McNAMARA delivered the opinion of the court:

A jury found defendant Sidney Collins guilty of rape, home invasion, and aggravated battery. The trial court sentenced defendant to concurrent terms of 60 years for rape, 30 years for home invasion and 5 years for aggravated battery. Defendant appeals, contending that the State failed to prove him guilty beyond a reasonable doubt; that the trial court erred in denying his motion to suppress identifications from a suggestive photographic display and subsequent lineup; and

that the trial court erred in admitting certain hearsay evidence.

Between 9:45 and 10:15 a.m., on June 28, 1984, a 59-year old woman was raped in her home in Cicero, Illinois. The victim testified that she showered after mowing the lawn, donned a robe, and was suddenly knocked to the floor with an afghan thrown over her head. As she was pushed onto her bed, the victim pulled up the afghan slightly and saw defendant. He had a "big head of hair" and a beard, and a nylon stocking over his head. He raped her and then put her in the bathroom, instructing her to lock the door from the inside. The victim yelled out the window to a neighbor, Rose Parma, that she had been raped. Parma telephoned the police. The victim later found $90 missing from her purse. The victim was unable to identify defendant at trial.

Georgette Ruf, a neighbor, testified that at about 9:40 a.m. she saw a grey car pull up outside, about 40 feet from her window. Ruf saw defendant exit the car, open the trunk, return to the car, sit and wait, then again exit the car. Ruf testified that she "got a good look at" him. As he walked by her window, he held a knee high stocking in each hand. Ruf thought he behaved suspiciously, and she wrote down the license plate number on his car. She went out to her porch to verify the number, and then placed the slip of paper in a book. Ruf later saw defendant "galloping" towards his car, and then driving away. Ruf described him as having light skin, bushy hair and a beard. He wore a beige knit shirt with matching pants. She could not identify his race. Ruf identified defendant in both photographic and physical lineups and in court. She testified that she paid no attention to the differences in size or color, or to the quality of the photographs in the array.

Pamela Cuneen, a neighbor, had just driven up to her home at 9:45 a.m. when she saw defendant walk by her car. He had "big shoulders, lots of hair, a beard and a compact body." She waited in the car until he passed because he "looked a little frightening." He walked right past her car and she saw his profile. He was "a portrait in tan and beige and brown because his clothes were brown and his arms were brown." She had not thought he was black because, in late June, "everybody had suntans and he was kind of brown-skinned." Cuneen identified defendant in photographic and physical lineups. At trial, she testified that she "saw enough so that [she] could identify him in the pictures." At trial she identified him again.

Rose Parma testified that she and her husband were watering the front lawn when she heard the victim's front door slam. Parma turned to look because the victim generally used her back door.

Parma saw defendant running from the house. He "stopped dead" and stared at Parma. She "got a very good look at him" with an unobstructed view and observed him for several seconds. Parma described defendant as a man with long bushy hair, which was messy but full. He wore a tan shirt, tan pants, and brown shoes. "He had darker skin, I thought he was Arabian." At trial she testified: "Well, to me he still looks Arabian." Parma identified defendant in photographic and physical lineups and at trial. She testified that she was quite certain of defendant's identification.

At the suppression hearing, defendant argued that the six photographs in the array included five white men and that defendant's picture was the only one of a black man. Moreover, defendant's picture was the only one with black edges, was slightly larger than the others, and was of a better quality. The State countered that defendant's photographs were put with white men because he had very light skin and to place them with photos of other black men would have been too suggestive. Moreover, none of the witnesses had described him as black. Once the police learned defendant was black, they placed him in a lineup with other black men.

The trial court found that the photographic display had not been impermissibly suggestive and denied defendant's motion to suppress the photographic and subsequent eyewitness identification evidence.

Officer Bill Cavaness testified for the State that in normal traffic conditions it takes approximately six minutes to drive from Pope's barbershop to the victim's home.

Defendant offered several witnesses who testified as alibi witnesses. Sandra Robles, defendant's girlfriend, testified that she spent the night of June 27 with defendant. Between 8:15 a.m. and 8:30 a.m., defendant left for Pope's barbershop, where he worked.

David Pope, the barbershop's owner, testified that between 10 and 10:15 a.m. he left defendant at the barbershop. He kept no records reflecting hours an employee was at work.

Larry Temple testified that he spoke with defendant sometime that morning. He could not recall the time and did not know where defendant was at 10:15 a.m.

Alberta Walker, a relative of defendant's, testified that between 9:30 and 9:40 a.m. she spoke with defendant at the barbershop. At approximately 11 a.m., although she was not sure of the exact time, she spoke with defendant on the telephone.

Linda Collins, who works at a cleaners store next to the barbershop, testified that sometime between 9 and 10 a.m. defendant brought some clothes to the cleaners.

Tommy Williams, a barbershop customer, testified that he and Pope left the shop between 10:15 and 10:30 a.m., and defendant was in the shop at that time. Williams admitted telling the police in different interviews that they left the shop at 9 a.m., 10:30 a.m., or noon.

Defendant testified that he arrived at the barbershop at 9:15 a.m. He went to the cleaners and the grocery store and returned to the barbershop at 9:35 a.m. At 10:30 a.m., Pope and Williams left the shop and defendant remained in the shop for the remainder of the morning. He spoke with Walker at 11 a.m. On cross-examination, defendant stated that in the last 10 years he had been convicted twice for robbery and once for burglary.

Defendant contends that he was not proved guilty beyond a reasonable doubt because the identification testimony was unreliable and his alibi was corroborated. This court may not substitute its judgment as to the weight of disputed evidence or the credibility of witnesses. Unless the evidence is so improbable that a reasonable doubt remains, the conviction will not be disturbed. *People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267, *rehearing denied* (1985), 474 U.S. 935, 88 L. Ed. 2d 274, 106 S. Ct. 585; *People v. Novotny* (1968), 41 Ill. 2d 401, 244 N.E.2d 182.

■■ The factors for assessing the reliability of identification testimony include the time of day when the witness had an opportunity to view the accused; the distance between the witness and the accused during the observation; the duration of the observation; the completeness of the witness' description of the accused's clothing; how closely defendant matched the description given; and the defendant's location at the time of his arrest in relation to the offense. *People v. Hancock* (1986), 143 Ill. App. 3d 1027, 493 N.E.2d 730.

■■ All the witnesses viewed defendant in daylight at midmorning, for at least several seconds. Ruf saw defendant for several minutes as he parked, exited the car, opened the trunk, returned to the car, waited, then left the car again, and finally when he returned, running from the victim's home, and drove away.

All the witnesses described defendant's tan shirt, matching pants, and Cuneen even described his brown shoes. Ruf specified it was a knit shell shirt. The witnesses described defendant as having long, bushy hair with a beard. Cuneen specified that he also had big shoulders and a compact body. In addition, defendant was within six minutes of the victim's home the morning of the attack.

Although Ruf was not wearing her glasses, she saw defendant from a distance of 40 feet. Cuneen was within several feet of defendant when he walked by her car. Parma was standing on the lawn next

to the victim's home when defendant came out the front door and ran down the stairs.

In addition, all the witnesses offered strong testimony indicating their certainty of the identification. They identified defendant in a photographic array, a lineup, and in court.

The fact that none of the witnesses described defendant as a black man does not substantially weaken the identification testimony. Cuneen said defendant was a "portrait in tan and beige and brown because his clothes were brown and his arms were brown." She did not think of defendant as black because many people were suntanned in midsummer, and "he was kind of brown-skinned." Parma testified that he "had darker skin. I thought he was Arabian." She stated that he still appeared to her to be Arabian. Parma was asked on re–cross-examination, "Is there any doubt in your mind that this is a black man?" She replied, "Well, he possibly is. I don't know." Ruf testified that even when she chose defendant's photograph from the array, she did not know he was a black man. In court, Ruf could not tell whether any of the photographs were of black men.

We conclude that the identification testimony was extremely strong and, under the relevant factors, was more than sufficiently reliable to support defendant's conviction. Any new argument raised in the reply brief concerning the identification issue will not be addressed. 107 Ill. 2d R. 341(g).

Defendant maintains that his alibi was "uncontradicted." He argues that uncertain identification testimony is not sufficient to convict where there is uncontradicted alibi testimony. *People v. Raker* (1979), 75 Ill. App. 3d 975, 394 N.E.2d 852.

We initially note that the identification testimony was not uncertain. The State's witnesses testified that defendant arrived at the victim's home around 9:40 or 9:45 a.m.

Defendant's witnesses offered varied testimony. Robles saw defendant leave at 8:15 or 8:30 a.m. Defendant said he arrived at work at 9:15 a.m. and went to the cleaners. Collins testified defendant came to the cleaners between 9 and 10 a.m. Thus, he still could have been at the victim's home, six minutes away, by 9:40 a.m., when Ruf and Cuneen saw him arrive.

Pope testified he left defendant in the shop at 10 or 10:15 a.m., when Pope went with Williams. Williams stated they left the shop around 10:15 or 10:30 a.m., but admitted telling the police it was either 9 a.m., 10:30 a.m., or noon. Thus, only Pope's testimony places defendant in the shop at the time the eyewitnesses saw him arrive at the victim's home. The trier of fact was not required to accept this

alibi in view of the strong, detailed testimony provided by the eyewitnesses.

We hold that defendant was proved guilty beyond a reasonable doubt.

Defendant next contends that the photographic array was so suggestive that the trial court should have suppressed the evidence of identifications made from both that array and from the subsequent lineup.

■ Convictions based on eyewitness identification following a pretrial identification by photographs will be set aside only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification, and whether or not it was unnecessarily suggestive depends upon a totality of the circumstances. *Simmons v. United States* (1968), 390 U.S. 377, 19 L. Ed. 2d 1247, 88 S. Ct. 967; *Stovall v. Denno* (1967), 388 U.S. 293, 18 L. Ed. 2d 1199, 87 S. Ct. 1967; *People v. Kubat* (1983), 94 Ill. 2d 437, 447 N.E.2d 247.

■■ ■ A photographic lineup is not impermissibly suggestive because all but defendant's photographs have a different background (*People v. Kubat* (1983), 94 Ill. 2d 437, 447 N.E.2d 247); all but defendant's are close-up pictures (*People v. Kubat* (1983), 94 Ill. 2d 437, 447 N.E.2d 247); only defendant wore glasses (*People v. Kubat* (1983), 94 Ill. 2d 437, 447 N.E.2d 247); a different format is used for defendant's photo (*People v. Bryant* (1983), 94 Ill. 2d 514, 447 N.E.2d 301); defendant's picture is a different size or color scheme (*People v. Hart* (1973), 10 Ill. App. 3d 857, 295 N.E.2d 63); or defendant's is the only color photograph (*People v. Hudson* (1972), 7 Ill. App. 3d 333, 287 N.E.2d 297). Here, the different format did not render the array impermissibly suggestive. The fact that defendant was the only black man portrayed was clearly because he had very light skin and none of the eyewitnesses described him as a black man.

We hold that the trial court did not err in denying the motion to suppress. Furthermore, even if the photographic lineup was impermissibly suggestive, the subsequent station house lineup and in-court identifications were based on independent observations. See *Stovall v. Denno* (1967), 388 U.S. 293, 18 L. Ed. 2d 1199, 87 S. Ct. 1967; *People v. Johnson* (1982), 104 Ill. App. 3d 572, 432 N.E.2d 1232.

■ Defendant contends that the trial court erred in admitting into evidence the slip of paper upon which Ruf wrote the license plate number of defendant's car because it constituted inadmissible hearsay. At trial, defendant objected only on the ground of chain of custody and thus has waived any hearsay objection. (*People v. Grayer* (1982),

106 Ill. App. 3d 324, 435 N.E.2d 1196; *People v. Patterson* (1981), 102 Ill. App. 3d 844, 430 N.E.2d 574.) Moreover, Ruf testified, without the paper, that she remembered seeing a grey car with the license plate number ERG 265 at the scene. The introduction of the slip of paper containing the number which she remembered independently, at most, was harmless error. Furthermore, defendant was linked to the scene by several eyewitnesses, and thus the exclusion of the paper would not have altered the result of the trial.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

WHITE, P.J., and FREEMAN, J., concur.