THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. PETER FAVORS, Defendant-Appellant.

First District (3rd Division)   No. 1—90—1282

Opinion filed September 29, 1993.

Rita A. Fry, Public Defender, of Chicago (Michael Davidson and Alison Edwards, Assistant Public Defenders, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Linda Woloshin, and Cristina A. Fichera, Assistant State's Attorneys, of counsel), for the People.

JUSTICE RIZZI delivered the opinion of the court:

Following a jury trial, defendant, Peter Favors, was found guilty on two counts of aggravated criminal sexual assault (Ill. Rev. Stat. 1987, ch. 38, par. 12—14), and one count of home invasion (Ill. Rev. Stat. 1987, ch. 38, par. 12—11). The trial court sentenced defendant to concurrent terms of 28 years' imprisonment for both counts of aggravated criminal sexual assault and 28 years' imprisonment for home invasion. Defendant now appeals. We affirm.

The issues before this court for review are (1) whether the trial court erred in denying defendant's motion to suppress all identification testimony; (2) whether the prosecutor made inflammatory remarks during the State's opening statement; (3) whether the trial court erred when it permitted the prosecutor to elicit certain testimony during the State's direct, redirect and cross-examinations of certain witnesses and when it allowed the prosecutor to reiterate por-

tions of said testimony during the State's closing argument; (4) whether the trial court erred when it permitted the prosecutor to declare during the State's closing argument that defendant determined who was going to testify for the State; (5) whether the prosecutor made statements during the State's closing argument that were not supported by the evidence; (6) whether the prosecutor made inflammatory prejudicial remarks to the jury during the State's closing argument; (7) whether the trial court erred in permitting the prosecutor to express his own opinion regarding James' testimony during the State's closing argument; and (8) whether the cumulative effect of the alleged errors at trial abridged defendant's right to a fair trial.

The following fact scenario occurred. K.J. got into bed around 11:30 p.m. on the night of June 14, 1988. K.J. testified that the kitchen light, the hallway light and her bedroom light were all on at the time she fell asleep. K.J. also left the windows open with the screens down because it was a hot night.

When K.J. awakened during the early morning of June 15, 1988, she saw defendant crouched down near her bedroom lamp. When defendant looked up at her she jumped off of her bed, whereupon defendant grabbed her, hit her in the face and attempted to pull her hair down over her eyes in order to conceal his identity. K.J. testified that despite defendant's attempt to prevent her from seeing him, she observed that he was wearing blue jeans, a checkered flannel shirt and a shiny shower cap. After pulling K.J.'s hair, defendant poked her in her neck and torso with a silver object. K.J. screamed but defendant told her to "stop that" and to "shut up."

K.J. testified that although she struggled with defendant, he eventually forced her to lie down on her bed, he tied her arms behind her neck with a cord and he placed a pillow and a blanket over her head. K.J. testified that defendant then placed his mouth on her vagina and that he subsequently inserted his penis into her vagina. K.J. further testified that after defendant lifted his body off of hers, she heard him get dressed and sort through some items in a bag. K.J. stated that shortly thereafter, she heard and felt defendant cut off a lock of her hair with a pair of scissors. Defendant then left the apartment.

After defendant departed, the victim waited for a short period of time before going to her neighbor Estelle Corpus' apartment, where Corpus cut the cord binding her hands. The victim then telephoned her pastor while another neighbor, Mrs. Burgess, called the police.

When the police arrived, K.J. was interviewed by Broadview police sergeant Richard Miller. The victim told Sergeant Miller that her assailant was a black male with a dark complexion; that he was be-

tween 6 feet and 6 feet 2 inches tall; that he weighed approximately 240 pounds; that he had a muscular physique; and that he was wearing blue jeans, a checkered flannel shirt and a shower cap during the assault. After K.J. talked to Sergeant Miller, she spoke to her pastor for a brief period of time. The victim was then taken to Loyola University Hospital, where she was treated.

Broadview Detective Steve Ryndak interviewed the victim at the hospital after she was treated. K.J. told the detective that she believed her assailant was named "Peter" (defendant) and that he lived with a neighbor named Jonathan James. In addition, K.J. told Detective Ryndak that she had seen defendant twice before: once while she was walking towards her back door after attending a church service, and again while she was getting into her car which was parked in the parking lot of her apartment complex. K.J. later testified that the first time she saw defendant, he asked her if she lived alone and that the second time she saw defendant he said "hi." K.J. told Detective Ryndak that she was about 10 feet away from defendant on both occasions.

After the victim named defendant as her assailant, Detective Ryndak telephoned James whereupon James told him that defendant's last name was Favors and that defendant was living with him. Detective Ryndak subsequently obtained a photograph of defendant from James. The photograph was taken in December of 1987 and did not accurately depict defendant's appearance at the time of the assault, which occurred in June of 1988.

Later, during that same afternoon, Detective Ryndak showed K.J. six photographs including the picture of defendant which he had obtained from James. The men in the other five photographs also matched K.J.'s description of the physical attributes of her assailant. K.J. was unable to identify her assailant from the photographs.

On June 16, 1988, Detective Ryndak received a telephone call from James. During their conversation, James asked Detective Ryndak to come to his apartment. When Detective Ryndak arrived at James' apartment, James showed him a pair of scissors that were lying underneath a couch. James told Detective Ryndak that the scissors did not belong to him. The scissors were recovered by the police as evidence. Detective Ryndak later showed the scissors to K.J., who identified them as hers. At trial, K.J., identified a pair of scissors as the ones that were missing from her apartment after the assault.

On June 18, 1988, Detective Ryndak took a new photograph of defendant at James' apartment. He later assembled a second array of five photographs which included the most recent photograph of

defendant. The individuals in each of the pictures fit the description of K.J's assailant. Defendant was the only person whose picture was displayed in both the first and second photographic arrays. When the second photographic array was shown to K.J., she identified defendant immediately and said, "this is the man that raped me." Defendant was arrested on June 22, 1988.

On June 23, 1988, defendant was placed in a lineup. All of the participants in the lineup wore shower caps and said the words "stop that" and "shut up." Upon viewing the lineup, K.J. identified defendant as her assailant.

Prior to the trial defendant filed a motion to suppress all identification testimony. This motion was denied by the trial court.

During the State's opening statement, the prosecutor made remarks describing the victim's ordeal and comments regarding the victim's conversation with her pastor after the assault, and he urged the jury to render verdicts of guilty on each charge. The propriety of these statements is contested on appeal.

During the trial, Corpus testified that on the morning K.J. was assaulted, she observed a man walk in the direction of James' apartment while she was looking through her living room window. Corpus further testified that she looked out of her window again approximately 20 minutes later, whereupon she observed the man, who was then wearing a shower cap on his head, walk from the area where James lived, toward 14th Street. Corpus testified that after observing the man for the second time, she heard a scream emanating from the direction of 14th Street. Corpus told the court that K.J. knocked on her door shortly thereafter.

At trial, the prosecutor elicited testimony from the victim regarding the details of the assault, her contact with her pastor immediately after the assault and her initial reluctance to disclose defendant's identity to the police prior to speaking to her pastor. The prosecutor later made references to K.J.'s testimony concerning her interactions with her pastor during the State's closing argument. The propriety of the above testimony and the reiteration of said testimony during closing arguments is contested by defendant on appeal.

The prosecutor also elicited testimony from the victim regarding a conversation between her and James after the assault. The victim testified that James stated that he believed that defendant assaulted her and that defendant consumed cocaine and watched pornographic movies. Defendant moved for a mistrial based upon the victim's testimony concerning her conversation with James; however, his motion was denied. Instead, the trial court instructed the jury to disregard the testi-

mony. Later, during the State's direct examination of James, James denied having made such a statement to K.J.

During the State's closing argument, the prosecutor made several statements which defendant now contends were improper: (1) the prosecutor speculated about the victim's thoughts during the assault; (2) the prosecutor made remarks expressing his own opinion with respect to the credibility of James' testimony; (3) the prosecutor commented on the physical evidence that the victim had been raped; (4) the prosecutor stated that defendant determined who was going to testify for the State; (5) the prosecutor also argued that defendant knew the occupants in the apartment building and that he knew that his roommate was going to be working until 7:30 in the morning on the date of the assault; (6) the prosecutor claimed that defendant disappeared immediately after the assault; and (7) the prosecutor concluded the State's closing argument by telling the jurors that they were the only people who could protect the victim from defendant.

The jury found defendant guilty of two counts of aggravated criminal sexual assault (Ill. Rev. Stat. 1987, ch. 38, par. 12—14) and one count of home invasion (Ill. Rev. Stat. 1987, ch. 38, par. 12—11). The trial court sentenced defendant to 28 years' imprisonment for both counts of aggravated criminal sexual assault and 28 years' imprisonment for home invasion, to be served concurrently. Defendant now appeals his conviction.

The first issue for review by this court is whether the trial court erred in denying defendant's motion to suppress all identification testimony. Defendant contends that the photographic identification procedure employed by the police was improper and that a physical lineup should have been conducted initially and *in lieu* of the photographic identification process because he would have been willing to participate in a physical lineup at the time that the first picture of defendant was shown to the victim. Defendant also contends that the entire identification procedure used by the police was suggestive, since his pictures were the only ones that appeared in both photographic arrays, thus tainting all subsequent identifications of him by the victim.

■ We are not persuaded by defendant's assertion that the photographic identification procedure used by the police was improper and suggestive. First, we find that the procedure of showing the victim pictures of defendant instead of immediately summoning him to appear in a lineup was proper. There is no legal necessity for the identification of a defendant in a physical lineup. (*People v. Barnes* (1983), 117 Ill. App. 3d 965, 973, 453 N.E.2d 1371, 1379; *People v. Moore*

(1974), 17 Ill. App. 3d 507, 510, 308 N.E.2d 210, 212.) Even if defendant was willing to submit to a lineup at the time of either photographic identification procedure, the police were justified in showing the victim defendant's photograph. The practice of showing photographs of criminal suspects to witnesses has been deemed essential to effective law enforcement. (*People v. Brown* (1972), 52 Ill. 2d 94, 99, 285 N.E.2d 1, 5; *Barnes*, 117 Ill. App. 3d at 973, 453 N.E.2d at 1379; *People v. Duarte* (1979), 79 Ill. App. 3d 110, 119, 398 N.E.2d 332, 339.) The procedure of permitting the initial identification of a defendant by his photograph has been widely and effectively used both for apprehending offenders and sparing innocent suspects the ignomy of arrest by allowing witnesses to exonerate such suspects in the process of scrutinizing photographs. *Simmons v. United States* (1968), 390 U.S. 377, 384, 19 L. Ed. 2d 1247, 1253, 88 S. Ct. 967, 971.

The presentation of photographs to the victim in the present case constituted normal police investigatory procedure. (See *People v. Jackson* (1973), 12 Ill. App. 3d 789, 793, 299 N.E.2d 142, 144.) Moreover, the procedure in question was clearly permissible as defendant was not already in custody as a suspect in this case at the time of the photographic identification. See *Jackson*, 12 Ill. App. 3d at 793, 299 N.E.2d at 144; see also *People v. Kubat* (1983), 94 Ill. 2d 437, 471, 447 N.E.2d 247, 261; *People v. Williams* (1975), 60 Ill. 2d 1, 9, 322 N.E.2d 819, 823-24; *People v. Jackson* (1973), 54 Ill. 2d 143, 147-48, 295 N.E.2d 462, 464; *People v. Holiday* (1970), 47 Ill. 2d 300, 307, 265 N.E.2d 634, 637 (the Illinois Supreme Court disapproves of the use of a photographic identification process when a suspect is already in custody and a lineup is feasible).

■ We also reject defendant's argument that the victim's identification of him was impermissibly suggestive on the basis that he was the only person in the lineup whose photograph had been previously displayed to the victim. Convictions based upon an identification of a defendant by an eyewitness following the witness' pretrial identification of the defendant when viewing his photograph will be set aside only if the photographic identification procedure was so impermissibly suggestive as to create a substantial likelihood of irreparable misidentification. *Simmons v. United States* (1968), 390 U.S. 377, 384, 19 L. Ed. 2d 1247, 1253, 88 S. Ct. 967, 971; *Stovall v. Denno* (1967), 388 U.S. 293, 302, 18 L. Ed. 2d 1199, 1206, 87 S. Ct. 1967, 1972; *People v. Collins* (1988), 176 Ill. App. 3d 169, 175, 530 N.E.2d 1143, 1147.

Whether or not such a procedure may be deemed impermissibly suggestive depends upon the "totality of the circumstances" surrounding the identification. (*Neil v. Biggers* (1972), 409 U.S. 188, 199,

34 L. Ed. 2d 401, 411, 93 S. Ct. 375, 382; *Stovall*, 388 U.S. at 302, 18 L. Ed. 2d at 1206, 87 S. Ct. at 1972; *People v. Camel* (1974), 59 Ill. 2d 422, 431-32, 322 N.E.2d 36, 41; *Collins*, 176 Ill. App. 3d at 175, 530 N.E.2d at 1147.) The following factors should be considered by a court when evaluating the totality of the circumstances surrounding a witness' pretrial photographic identification of a defendant: (1) the opportunity of the witness to view defendant at the time of the crime; (2) the witness' degree of attention at the time of the crime; (3) the level of accuracy of the witnesses' prior description of defendant; (4) the level of certainty demonstrated by the witness at the time of her confrontation with defendant; and (5) the length of time between the crime and the confrontation. *Manson v. Brathwaite* (1977), 432 U.S. 98, 114, 53 L. Ed. 2d 140, 153, 97 S. Ct. 2243, 2253; *Neil*, 409 U.S. at 199, 34 L. Ed. 2d at 411, 93 S. Ct. at 382; *Camel*, 59 Ill. 2d at 431-32, 322 N.E.2d at 41; *People v. Westbrook* (1st Dist. September 9, 1992), No. 1—88—0974 slip op. at 18; *People v. Harris* (1991), 220 Ill. App. 3d 848, 860, 580 N.E.2d 1342, 1350.

Upon applying these five factors to the present case, we find that the victim's photographic identification of defendant was reliable. With respect to the first factor, the victim had an opportunity to view defendant when she first awakened and when the assault commenced, despite the measures that defendant took to conceal his identity.

In regard to the second factor, the record indicates that the victim saw defendant's face and clothing and listened to the sound of his voice with a heightened degree of attention. See *Neil v. Biggers* (1972), 409 U.S. 188, 200, 34 L. Ed. 2d 401, 412, 93 S. Ct. 375, 382-83; *People v. Testa* (1984), 125 Ill. App. 3d 1039, 1045, 466 N.E.2d 1126, 1131 (a victim who was conscious during her sexual assault "was no casual observer, but rather the victim of one of the most personally humiliating of all crimes").

Third, the victim's description of her assailant given shortly after the assault was accurate with respect to defendant as it included his approximate age, height, weight, physique and complexion color, as well as his first name and residence. There is no apparent discrepancy between the victim's description of her assailant and defendant and defendant does not contest the accuracy of the victim's description of him. Although K.J. was unable to identify defendant upon viewing an old photograph of him in the first pictorial array, she positively identified him as her assailant upon viewing the second pictorial array, which included a photograph of him which was taken three days after the assault.

With respect to the factor of the witness' level of certainty at the time of her confrontation with defendant, the record shows that K.J. was confident that defendant was her assailant. Furthermore, only three days had elapsed between the date of the crime and the date that the victim identified defendant in a photographic lineup, and only eight days had elapsed between the date of the crime and the day the victim identified defendant in a physical lineup. Moreover, there is no evidence that Detective Ryndak directed the victim's attention toward defendant's photograph or in any way suggested that he was her assailant. K.J. had seen defendant on two prior occasions.

Upon viewing the identification procedure within the totality of the circumstances, we find that all of the above factors considered together substantiate the trial court's finding that the victim's identification of defendant was reliable. There was no substantial likelihood of irreparable misidentification of defendant by the victim.

For the above reasons, we conclude that the pretrial identification procedures were neither improper nor impermissibly suggestive. Thus, we affirm the trial court's dismissal of defendant's motion to suppress identification.

Next, defendant contends that the prosecutor made inflammatory remarks during the State's opening statement. The State maintains that defendant waived his right to appellate review of all of the alleged prejudicial statements made by the prosecution during its opening statement because he made no objection at trial and he failed to mention the issue in his post-trial motion. In the alternative, the State argues that the prosecutor's remarks were proper and that any error which may have resulted from his comments was harmless beyond a reasonable doubt because the overwhelming evidence of defendant's guilt, coupled with the effects of cautionary instructions, rendered any possible prejudice harmless.

The waiver rule provides that a party waives his right to appellate review of an alleged error at trial unless he preserves said right by objecting to the alleged impropriety during trial in a timely manner and by mentioning the specific objection in a post-trial motion. *People v. Enoch* (1988), 122 Ill. 2d 176, 186-88, 522 N.E.2d 1124, 1129-32.

Pursuant to Illinois Supreme Court Rule 366(a)(5) (134 Ill. 2d R. 366(a)(5)), however, this court may, in the exercise of its responsibility to insure that a cause has a just result, ignore the doctrine of waiver and decide a case on grounds not properly raised or not raised at all by the parties. *People v. Shelton* (1993), 252 Ill. App. 3d 193, 200; *Palomar v. Metropolitan Sanitary District* (1992), 225 Ill. App. 3d 182, 188, 587 N.E.2d 1067, 1071; *City of Wyoming v. Illinois Liquor Con-*

*trol Comm'n* (1977), 48 Ill. App. 3d 404, 407-08, 362 N.E.2d 1080, 1083; *Occidental Chemical Co. v. Agri Profit Systems, Inc.* (1975), 37 Ill. App. 3d 599, 603, 246 N.E.2d 482, 485.

■ In the present case, defendant failed to preserve these issues for review. We will, however, review defendant's allegations of prosecutorial misconduct during the State's opening statement pursuant to our authority granted under Rule 366(a)(5). 134 Ill. 2d R. 366(a)(5); *People v. Shelton* (1993), 252 Ill. App. 3d 193, 200; *Palomar*, 225 Ill. App. 3d at 188, 587 N.E.2d at 1071.

Defendant contends that he was denied a fair trial when the prosecutor made the following inflammatory remarks during the State's opening statement:

"Now, on the evening of June 14, about 11:30 at night, K.J. was falling asleep. She had been home. She was reading in bed. She had her kitchen lights on, and her bedroom lights on. Her eyes started to close safe in the sanctuary of her own apartment, but unbeknownst to her in just a few hours, the most horrible nightmare of her life was about to unravel. That man, Peter Favors, is the person who caused this nightmare, folks.

What the evidence is going to show is while K.J. fell asleep that night in her bedroom, that man, the defendant who had been staying with Jonathan James, that neighbor kiddy-corner to the victim, was lurking out in that courtyard."

The purpose of opening statements is for each party to apprise the jury of facts that it expects to prove during the course of a trial. (*People v. Coleman* (1990), 201 Ill. App. 3d 803, 806-07, 559 N.E.2d 243, 245-46.) Absent deliberate misconduct, an error made during an opening statement is not grounds for reversal unless it results in substantial prejudice to the accused. (*Coleman*, 201 Ill. App. 3d at 806-07, 559 N.E.2d at 245-46.) The above statement does not constitute reversible error as the record does not indicate that the prosecutor was guilty of deliberate misconduct and the remarks in question did not substantially prejudice defendant.

Defendant also claims that the prosecutor made an inflammatory remark during the State's opening statement when he said that defendant left K.J. "battered and shattered." The complained-of remark in its full context reads as follows:

"He leaves K.J. battered and shattered. She waits for about 10 minutes and then she goes to Estelle's apartment crying out for help. The lamp cord is cut from her hands. She calls her pastor; the police are called. The police arrive. They talk to her. They take her to Loyola Hospital ***."

There is no evidence that the above statement amounted to deliberate misconduct on the part of the prosecution or that it prejudiced defendant. As we noted above, the purpose of an opening statement is to apprise the jury of the facts counsel expects to present at trial. (*People v. Coleman*, 201 Ill. App. 3d at 806, 559 N.E.2d at 245.) In the present case, K.J. testified during the trial that she telephoned her pastor after Corpus untied her and that he then arrived at Corpus' apartment, where she talked to him just before she was taken to the hospital. K.J.'s testimony was further corroborated by Officer Miller, who stated that K.J.'s pastor arrived at the same time the paramedics did. Accordingly, we find that the statement in question was proper as it was a comment upon evidence which was ultimately presented at trial.

Finally, defendant contends that the prosecutor's statement to the jury, wherein he said, "you will return verdicts of guilty; verdicts that will protect K.J. from the defendant," during the State's opening statement was improper. We find that any error made by the trial court was cured when the court instructed the jury in the following manner: "Neither opening statements nor closing arguments are evidence, and any statement or arguments made by the attorneys which is not based on the evidence should be disregarded." An improper prosecutorial remark may be cured when the court instructs the jury to disregard arguments not based upon the evidence and to only consider evidence presented to it instead. (*People v. Thomas* (1988), 172 Ill. App. 3d 172, 179, 526 N.E.2d 467, 471.) Based on the foregoing, the remarks in question do not constitute reversible error.

For the above reasons, we conclude that defendant was not denied a fair trial on the basis of the prosecutor's remarks made during the State's opening argument.

The third issue before this court is whether defendant was denied a fair trial (1) when the trial court permitted the prosecutor to elicit testimony from K.J. during direct and redirect examinations concerning her communication with her pastor after the assault; (2) when the prosecutor elicited testimony from K.J. concerning her conversation with James after the assault; (3) when the prosecutor elicited testimony from James concerning an alleged statement that he made to K.J. during their conversation after the assault; and (4) when the court permitted the prosecutor to reiterate certain portions of the victim's testimony on redirect during the State's closing argument.

■■ With respect to defendant's contention that the direct and redirect testimony by K.J. regarding her pastor was improper, the State maintains that defendant failed to preserve said issue for appellate re-

view because he failed to object to any testimony relating to K.J.'s pastor and he failed to allege any such error in his post-trial motion. See *People v. Enoch* (1988), 122 Ill. 2d 176, 186-88, 522 N.E.2d 1124, 1129-32.

We will, however, review all issues raised by defendant concerning testimony elicited during the State's direct and redirect examinations of K.J. pursuant to our authority granted under Illinois Supreme Court Rule 366(a)(5). 134 Ill. 2d R. 366(a)(5); *People v. Shelton* (1993), 252 Ill. App. 3d 193, 200; *Palomar v. Metropolitan Sanitary District* (1992), 225 Ill. App. 3d 182, 188, 587 N.E.2d 1067, 1071.

K.J.'s direct testimony at issue reads as follows:

"THE STATE: After your arms were unbound, you are in Estelle's apartment, what happened then?

K.J.: Well, then she took the—I went back to my apartment and I went to call my pastor.

THE STATE: K.J., at the time would you describe your physical condition to the ladies and gentlemen?

K.J.: I was in shock and I was upset and in a lot of pain.

THE STATE: Were you able to call your pastor?

K.J.: Uh-huh.

          * * *

THE STATE: After you spoke to Sergeant Miller this very brief period of time what happened then?

K.J.: Then the ambulance arrived and my pastor arrived the same time the ambulance did, and I talked to him for a couple of seconds and then they put me in the ambulance."

Evidence is material when it is probative of a question before the trier of fact. It is probative when to the normal mind it tends to prove or disprove a matter at issue. (*People v. Nichols* (1975), 27 Ill. App. 3d 372, 386, 327 N.E.2d 186, 196-97.) In the present case, the admission of K.J.'s testimony that she telephoned her pastor was proper as it provided the jury with an account of the events which occurred on the morning of June 15, 1988. The admission of evidence is within the sound discretion of the trial court, and its ruling on such a matter will not be reversed absent a clear abuse of discretion. (*People v. Kimbrough* (1985), 138 Ill. App. 3d 481, 490, 485 N.E.2d 1292, 1299.) The trial court did not abuse its discretion in admitting the direct testimony in question. In addition, it was proper for the prosecutor to reiterate the aforementioned evidence during the State's closing argument. See *People v. Stuckey* (1992), 231 Ill. App. 3d 550, 564, 596 N.E.2d 646, 656.

Next, we will address the question of whether the trial court erred in admitting redirect testimony by K.J. concerning her pastor. The testimony in question, in its full context, reads as follows:

"THE STATE: K.J., just a couple of questions. When Officer Miller arrived at your apartment, you told the defense attorney you really didn't want to talk about the incident, is that correct?

K.J.: That's correct.

THE STATE: Would you tell the folks on the jury why?

DEFENSE COUNSEL: Objection, conclusion, judge, not relevant.

THE COURT: Why is it relevant, counsel?

THE STATE: Judge, it goes to exactly what counsel cross examined this witness to.

DEFENSE: May I make a point?

THE COURT: Yes.

DEFENSE COUNSEL: It's just that she has already testified she wanted to assist the officer in catching the person.

THE COURT: Overruled. Go ahead.

K.J.: First, of all, I was in shock. I was in pain. I talked to him for a very short period of time.

Second of all, I am a woman of God, and I do not know exactly how God wants to handle a situation like this.

\* \* \*

THE STATE: Is that why you called your pastor?

K.J.: That is exactly why I called him because I didn't want to give away any information and do anything without knowing how God would handle a situation like this.

THE STATE: And did you confer with your pastor after talking to Officer Miller?

K.J.: I really didn't confer with him at that time. I really conferred with him after he took me back to my sister-in-law's. That's when I really had the opportunity to talk to him."

As to the question of the propriety of the above testimony, we note that a witness may be asked questions during a redirect examination which are designed to remove unfavorable inferences or impressions raised during cross-examination. *People v. Sanchez* (1979), 73 Ill. App. 3d 607, 610, 392 N.E.2d 378, 379.

In the present case, the testimony in question was elicited by the prosecutor to remove any unfavorable inferences or impressions raised on cross-examination. Negative inferences about the victim's credibility were raised during her cross-examination by the defense:

Defense counsel questioned K.J. at length concerning her reluctance to discuss the assault with the police immediately after the incident. Thus, it was proper for the State to elicit testimony on redirect which explained why K.J. did not disclose defendant's identity immediately after the assault in order to clarify any questions the jury may have formed as a result of listening to defense counsel's cross-examination. Accordingly, the trial court did not abuse its discretion in admitting said testimony. In addition, it was proper for the prosecutor to reiterate the aforementioned evidence during the State's closing argument. See *People v. Stuckey*, 231 Ill. App. 3d at 564, 596 N.E.2d at 656.

Defendant also alleges that the prosecutor elicited irrelevant and inflammatory testimony from K.J. during direct examination regarding her conversation with Jonathan James about defendant. The State maintains that there was no error on the part of the prosecutor because the prosecutor made the statement in question in an effort to prevent the jury from possibly being misled during subsequent cross-examination by the defense.

The statement in question reads as follows:

> "James believed that the defendant was the one who attacked me and that he had been very concerned about him because he sat at home all day watching pornographic movies and he had a problem with cocaine * * *."

Defendant objected and moved for a mistrial. The trial court denied defendant's motion and instructed the jury to disregard K.J.'s testimony. The court made the following statement upon making its ruling:

> "At this time I am going to direct you to disregard any mention in that conversation of anything other than the identification of—by K.J. of the defendant, Mr. Favors. In other words, any conversation that Mr. James had with K.J. regarding his concerns about the defendant, any observations by Mr. James about whether or not Mr. Favors was involved with any drugs or whether or not Mr. Favors was involved with any pornographic films is to be disregarded by you."

If a timely objection is made at trial, the court may correct the error by sustaining the objection or instructing the jury to disregard the answer or remark. (*People v. Carlson* (1980), 79 Ill. 2d 564, 577, 404 N.E.2d 223, 238.) We find that the trial court erred when it admitted the testimony in question. The error, however, was cured. After K.J. testified concerning the conversation, defendant objected. Defendant's objection was then sustained and the jury was instructed to consider the conversation only for purposes of identification. Based

on the foregoing, defendant was not prejudiced by the testimony in question.

Defendant also contends that the prosecutor elicited improper testimony when he asked James if James told the victim: "I think defendant did it." Defendant claims that the prosecutor's question was improper because he asked James his opinion as to defendant's guilt.

We find that the trial court did not abuse its discretion when it permitted the prosecutor to elicit the above testimony. The question asked, and James' subsequent answer, corroborated K.J.'s testimony that she had had a conversation with James after the assault. Even if the prosecutor had intended to elicit James' opinion concerning defendant's guilt, the testimony in question did not prejudice defendant. James testified that he did not tell K.J. that he believed defendant attacked her. This testimony could have helped defendant by placing a question in the jury's mind concerning K.J.'s prior testimony.

Accordingly, defendant was not denied a fair trial when the prosecutor elicited testimony concerning K.J.'s pastor and her conversations with James. In addition, defendant was not denied a fair trial when facts elicited from the above testimony were reiterated during the State's closing argument.

The next four issues before this court concern alleged improper remarks made by the State during its closing argument. Defendant contends that he was denied a fair trial because (1) the prosecutor declared during the State's closing argument that defendant determined who was going to testify for the State; (2) the prosecutor made four statements which were not supported by the evidence adduced at trial; (3) the prosecutor made remarks on three occasions which were inflammatory and prejudicial; and (4) the prosecutor expressed his own opinion in regards to James' testimony upon two occasions. The State maintains that all of these issues were waived for review because defendant failed to object to any of the statements at trial and/or to specifically allege the errors in his post-trial motion. We will, however, review these issues pursuant to Rule 366(a)(5). 134 Ill. 2d R. 366(a)(5); *People v. Shelton* (1993), 252 Ill. App. 3d 193, 200; *Palomar v. Metropolitan Sanitary District* (1992), 225 Ill. App. 3d 182, 188, 587 N.E.2d 1067, 1071.

First, defendant alleges that he was denied a fair trial because the prosecutor commented upon his refusal to testify during the State's closing argument when he made the following statement: "Defendant gave us our witnesses. He is the one, Ladies and Gentlemen, who decided who was going to testify in this case."

A prosecutor's reference to a defendant's failure to testify, when intended or calculated to direct the jury's attention to said fact, may warrant reversal. (*People v. Lyles* (1985), 106 Ill. 2d 373, 390, 478 N.E.2d 291, 297.) A prosecutor, however, has wide latitude during closing argument. (*People v. Stuckey* (1992), 231 Ill. App. 3d 550, 563, 596 N.E.2d 646, 655.) Improper comments made during closing arguments do not constitute reversible error unless they substantially prejudice the accused. (*Stuckey*, 231 Ill. App. 3d at 564, 596 N.E.2d at 657; *People v. Jenkins* (1991), 209 Ill. App. 3d 249, 262, 568 N.E.2d 122, 131.) Arguably, the comment in question was improper; however, said comment did not prejudice defendant and therefore was not sufficient to warrant the reversal of his conviction.

Defendant next alleges that the prosecutor made four statements which were not supported by the evidence adduced at trial. We will address each of the statements in question in the order in which they were made by the prosecutor. First, defendant contends that the prosecutor commented upon facts not in evidence relative to defendant's knowledge when he made the following statement:

"Ladies and Gentlemen, the defendant knew that apartment complex over there at 2116 South 14th Street. He knew the occupants in those six apartments. He knew that his roommate was going to be working until 7:30 in the morning on June 15th, 1988. He knew that there was an elderly lady in apartment 2 N of that apartment complex and he knew that K.J. was living alone in apartment 1 N.

He knew how the windows worked in that apartment complex. He knew that he could pop up that screen at her living room window and be inside without breaking a sweat."

As we noted above, a prosecutor has wide latitude during closing argument. (*Stuckey*, 231 Ill. App. 3d at 563, 596 N.E.2d at 655.) A prosecutor's comments may not be labelled improper if said comments are based upon facts in the record or reasonable inferences drawn therefrom. (*Stuckey*, 231 Ill. App. 3d at 563, 596 N.E.2d at 655.) The above remark was proper as the prosecutor was drawing logical inferences from the evidence. The following facts are in the record: Defendant lived with Jonathan James in the same apartment building as the victim; the building was a one flat with six units; on the morning defendant attacked K.J., James was working a double shift from 3 p.m. to 7:30 a.m.; and K.J. had met defendant on two prior occasions whereupon she told him that she lived alone. Since the apartment building that defendant and K.J. lived in was relatively small, it may easily be inferred that defendant knew all of the residents in the

building. It may be further inferred that defendant would be familiar with his roommate's work schedule and whereabouts.

The second statement which defendant alleges was not supported by the evidence reads as follows:

"And you heard Estelle tell you what she saw before the rape. Well, folks, you know who that man was walking around that courtyard before the rape. Peter Favors. He was kind of checking out the layout. And then he left her apartment. Estelle can only tell you truthfully that he went west.

But what lays west, Jonathan James' apartment. What did he do? He went inside for awhile. I don't know what he did inside that apartment for about 20 minutes but what I would suggest the evidence shows is that he is not sporting a shower cap and that is when he proceeds to K.J.'s apartment."

Again, we find that the prosecutor's statements were proper comments on and logical inferences drawn from the evidence presented at trial. Corpus testified that on the morning K.J. was attacked, she saw a man walking in the direction of James' and defendant's apartment. About 20 minutes later, Corpus saw a man wearing what appeared to be a shower cap on his head walking east from the area where James and defendant lived towards 14th Street, where the victim lived. K.J. testified that when defendant raped her, he was wearing a shower cap on his head. Based on the evidence, it may be inferred that defendant was the man Corpus saw in her courtyard that morning.

Defendant also contends that the prosecutor mischaracterized the evidence when he made the following statement:

"Well, you know, folks, she was penetrated and you know by the testimony of Rod Anderson there was semen present. It is absolutely clear that she was raped by the defendant that morning."

Defendant argues that this remark improperly suggested to the jury that the presence of semen was conclusive proof that defendant sexually assaulted K.J.

At trial, K.J. testified that defendant was the individual who sexually assaulted her. She also testified that defendant placed his penis in her vagina during the assault. The serologist testified that a vaginal swab used to collect a specimen from the victim's vagina following the assault tested positive for semen. The prosecutor's comment was that this test result corroborated K.J.'s testimony that sexual intercourse occurred on the morning in question.

Defendant cites *People v. Linscott* (1991), 142 Ill. 2d 22, 28-31, 566 N.E.2d 1355, 1358-59, in support of his position. The facts in

*Linscott,* however, are distinguishable from the facts in the present case. In *Linscott,* the serologist testified at trial that head and pubic hairs found in the victim's apartment were consistent with that of defendant. He did not, however, positively testify that the hairs came from defendant. During closing argument, the prosecutor repeatedly argued that the hairs found in the victim's apartment and on her crotch were in fact defendant's hairs. *Linscott* is distinguishable from the present case because the prosecutor in the present case stated during closing argument that there was semen present in the victim's vagina. He did not, however, explicitly state that the semen recovered from the victim's vagina came from defendant. Accordingly, the remark in question was not error pursuant to *Linscott.*

In addition, defendant contends that the prosecutor made a statement which was not supported by the evidence during the State's closing argument when he said that defendant was "nowhere to be found on June 15th when Investigator Ryndak went to James' apartment the first time," because the statement implies that defendant's flight was evidence of his guilt. The statement in its context reads as follows:

> "These scissors were in defendant's apartment. And you know counsel says, well, gee, Officer Ryndak didn't find them on the 15th. Well, ladies and gentlemen, let's think about that.
>
> Peter Favors was nowhere to be found on June 15th when Investigator Ryndak went there the first time. You know what happened to these scissors? When Peter Favors finally came home he brought them there. He had these scissors."

We find that this statement was a proper comment as it was a logical inference drawn from the evidence since the record shows that defendant was not home the first time Officer Ryndak visited the apartment that James and defendant shared. The record also reflects that the scissors were recovered at a later date after they were discovered by James. Moreover, the prosecutor's remark was invited by a portion of defense counsel's closing argument which reads as follows:

> "Now, the scissors the State would suggest to you that the scissors speak as loud as six K.J.'s Well, Officer Ryndak *** would have you believe that on June 15th, sometime in the afternoon when he went to that apartment and searched it he didn't look under the couch.
>
> Well, I submit to you, ladies and gentlemen, that is facetious. *** Anyone in their right mind looking for evidence such as a pair of scissors or a silver object, short, that was used to

stab someone and scratch them would look in every single place in a suspect's home or apartment or wherever it was to find such an item. They would rip the place apart and tear it apart. And he would have you believe that he did not, and it was not until Jonathan James came home, two days later, after work or from wherever he was, and moved the couch during cleaning and found them.

For those ladies and gentlemen, to be of any great values, the State would have had to exclude how they got there and they did not exclude how they got there other than anyone who may have been in the apartment. And we both know that, all know there were two people there. They did not exclude Jonathan James from having brought those in there."

A defendant cannot provoke a reply to his own argument and then allege that the opposing party's response constitutes error. (*People v. Trimble* (1975), 27 Ill. App. 3d 353, 361, 326 N.E.2d 437, 443.) In the above statement, defense counsel was trying to convince the jury that anyone could have placed the scissors under the couch. In the statement at issue, the prosecutor was offering an explanation to the jury as to how the scissors got under the couch. The prosecutor's statement was a proper response to defense counsel's argument. Defendant has failed to show that the prosecution made any statements which were not supported by the evidence during the State's closing argument.

Defendant's next contention concerning alleged improper remarks made by the prosecution during the State's closing argument is that the prosecutor made inflammatory prejudicial remarks on three separate occasions. First, defendant claims that he was prejudiced when the prosecutor speculated as to K.J.'s thoughts during her assault. The prosecutor stated:

"What did he do then? He bound her hands as tight as he could and he raped her. He raped her vaginally, and he put his mouth on her vagina. Then, ladies and gentlemen, as she lay under those covers, for that moment of silence, not knowing what to think, not knowing if what had just happened to her was going to be the last thing that happened to her on the face of this earth, not knowing if his face was going to be the last human being that she was ever to see she waited. What did she wait for? I would suggest to you, ladies and gentlemen, she thought she was going to die."

Defendant maintains that the trial court should have sustained his objection to the above remark. We agree.

■ We find that the above remarks by the prosecutor were improper. Improper comments made during closing arguments, however, do not constitute reversible error unless they result in substantial prejudice to the accused. (*People v. Stuckey* (1992), 231 Ill. App. 3d 550, 564, 596 N.E.2d 646, 656; *People v. Jenkins* (1991), 209 Ill. App. 3d 249, 262, 568 N.E.2d 122, 131.) Although the trial court erred when it overruled defendant's objection to the comments in question, the ruling did not substantially prejudice defendant or deprive him of a fair trial.

Next, defendant argues that the prosecutor further aroused the jury's sympathies when he made the following comment concerning K.J.'s delayed mention and description of defendant to the police:

"Shame on K.J. for not composing herself quicker after this rape.

You heard the questions on cross-examination by the defense counsel. Why didn't you tell us that? Well, you know, folks, maybe they should have slapped her around and popped a couple of valiums in her mouth and sat her down and said come on lady."

Defendant's objection to this comment was overruled.

Throughout the trial, defense counsel questioned the reliability of the victim's identification of defendant. One of defendant's arguments was that K.J.'s identification of him was unreliable because she did not tell the police that defendant raped her as soon as they arrived at her apartment building. Although the statement in question was a response to defendant's theory, it was improper and the trial court erred in failing to sustain defense counsel's objection to it. Improper comments made during closing arguments which are not material do not deprive defendant of a fair trial. (*People v. Stuckey*, 231 Ill. App. 3d at 564, 596 N.E.2d at 656; *People v. Cobb* (1989), 186 Ill. App. 3d 898, 914-16, 542 N.E.2d 1171, 1182-84.) The prosecutor's remark does not constitute reversible error as the State's reference to Valium was not material and defendant was not substantially prejudiced by this statement.

Third, defendant contends that the following remark was inflammatory:

"In a few moments you will be going into that jury room to decide the defendant's guilt or innocence. K.J.'s only protection from this man is you. Her dignity was ripped away from her in her bedroom on the morning of June the 15th, 1988. Don't let him rip away her dignity again."

The above remark was proper and does not constitute reversible error. A prosecutor may discuss the evils of a crime and urge the fearless administration of justice. *Stuckey*, 231 Ill. App. 3d at 565, 596 N.E.2d at 659; *People v. Jones* (1982), 108 Ill. App. 3d 880, 888, 439 N.E.2d 1011, 1018.

For the foregoing reasons, we find that the prosecutor did not make any remarks during the State's closing argument that were inflammatory and sufficiently prejudicial to constitute reversible error.

■ Defendant also claims that the prosecutor improperly expressed his own opinion with regard to James' testimony upon two occasions during the State's closing argument. The first statement at issue reads as follows:

> "Folks, not only do you have her identification in this case, but you have the help of Jonathan James. I know Jonathan James kind of played around with the truth a little bit or at least I would suggest that up there, but actually, folks Jonathan James is the man who got him off the streets within days of this rape."

Complained-of remarks must have resulted in substantial prejudice to the accused in order to constitute reversible error, such that absent those remarks, the verdict would have been different. (*People v. Stuckey*, 231 Ill. App. 3d at 564, 596 N.E.2d at 656; *People v. Harris* (1989), 187 Ill. App. 3d 832, 841-42, 543 N.E.2d 859, 864.) Based on the foregoing case law, the statement in question was proper.

Defendant also alleges that the prosecutor improperly expressed his own opinion with regard to James' interests and credibility when he said: "James was ready to hang defendant out to dry from day one." The statement at issue in its full context reads as follows:

> "Now folks, you also have an opportunity to consider the demeanor, the type of person that testified on behalf of the State. You had an opportunity to see K.J., to hear about her. This guy, ladies and gentlemen, has the best rape victim in the world to have because she would never, never come into a court and say that man raped me unless she is absolutely sure. Jonathan James was ready to hang him out to dry from day one.
>
> And she is telling him I don't know if it is Peter. She in identifying the assailant in the photo array is looking at the person who raped her. She looked at that photograph and she said, that is the man."

We find that the prosecutor's remark was a proper comment based upon the evidence presented at trial. A prosecutor may com-

ment upon the strength of his case based upon the evidence. (*Stuckey*, 231 Ill. App. 3d at 564, 596 N.E.2d at 656.) K.J. testified that James told her he believed defendant was her assailant. Detective Ryndak testified that he was able to determine defendant's last name with the help of James. The record also shows that James telephoned the police to inform them about the scissors he found in his apartment and that he told the police where they could find defendant. Therefore, the prosecutor's remark constituted a proper comment upon the evidence. The trial court did not err in permitting the prosecutor to express his opinion of James' prior testimony during the State's closing argument.

Accordingly, we conclude that the trial court did not commit reversible error by admitting any of the above remarks made by the prosecutor during the State's closing argument.

The final issue before this court is whether the cumulative effect of the alleged errors at trial abridged defendant's right to a fair trial. The State, in reliance upon *People v. Albanese* (1984), 102 Ill. 2d 54, 82, 464 N.E.2d 206, maintains that defendant's claim for reversal based on cumulative error must be rejected as he cannot demonstrate that the trial court committed any error.

In cases where individual errors committed at trial do not merit reversal alone, the cumulative effect of said errors may deprive the defendant of a fair trial. (*Albanese*, 102 Ill. 2d at 82-83, 464 N.E.2d at 220; *People v. Campbell* (1992), 264 Ill. App. 3d 712, 739; *People v. Stuckey*, 231 Ill. App. 3d at 563, 596 N.E.2d at 655; *People v. Batson* (1992), 225 Ill. App. 3d 157, 169, 587 N.E.2d 549, 557; *People v. Johnson* (1991), 215 Ill. App. 3d 713, 734-35, 575 N.E.2d 1247, 1260-61.) In such cases, due process and fundamental fairness require that the cause be remanded for a new trial. *People v. Campbell*, 264 Ill. App. 3d at 739; *Stuckey*, 231 Ill. App. 3d at 563, 596 N.E.2d at 655; *Batson*, 225 Ill. App. 3d at 169, 587 N.E.2d at 557; *Johnson*, 215 Ill. App. 3d at 734-35, 575 N.E.2d at 1260-61.

██ In the present case, defendant has failed to demonstrate that any issue which he brought before this court constitutes reversible error and only three of the alleged errors constitute harmless error. "The whole can be no greater than the sum of its parts." (*Albanese*, 102 Ill. 2d at 82-83, 464 N.E.2d at 220; *People v. Campbell*, 264 Ill. App. 3d at 739.) Accordingly, the cumulative effect of the errors at trial did not deprive defendant of a fair trial and do not warrant reversal of defendant's convictions.

For the aforementioned reasons, we affirm defendant's convictions and sentences for aggravated criminal sexual assault and home invasion.

Affirmed.

TULLY, P.J., and CERDA, J., concur.